People of the State of Illinois, Plaintiff, Defendant in Error, v. Edward James (Impleaded), Defendant, Plaintiff in Error.

Gen. No. 50,192.

First District, First Division.

September 13, 1965.

Charles N. Brusso, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant, Edward James, was tried jointly with Lydell Walls on a charge of forcible rape. Both were found guilty, and each was sentenced to the penitentiary for a term of 15 to 25 years. Defendant, Edward James, on appeal, contends: (1) that the evidence did not prove his guilt beyond a reasonable doubt, since the testimony of the complaining witness was uncorroborated; and (2) that the trial court com-

mitted prejudicial error in allowing the jury to hear evidence of a separate and distinct offense.

The prosecutrix, Mrs. Yanetta Harrington, testified that she lived at 8016 South Ingleside Avenue, Chicago, with her husband and child. She had met her husband at Talladega College. On the evening of July 25, 1961, in the absence of her husband, she had been entertaining guests at home, Mr. and Mrs. Benjamin Terry. After the guests left, she retired at about 1:00 a. m. When her husband arrived home at 2:30 a. m. on July 26, 1961, they had an argument over his late arrival and, as a result, she dressed and left to go to the home of her mother-in-law at 63rd and Rhodes Avenue. While walking north on Ingleside, in the middle of the block between 79th and 80th Streets, she was accosted by three men. The first man, Edward McLain (who was not on trial), grabbed Mrs. Harrington by the arm and stuck a screw driver to her side and said, "This is a stickup." Mrs. Harrington told McLain she didn't have any money, and he responded by a vulgar expression. Then defendants Edward James and Lydell Walls came up. Walls had a gun. She had never seen any of the three before.

The prosecutrix testified in detail as to sexual intercourse with each of the three. They took her through an alley and under a rear stairway, and forced her to partially disrobe after pulling at her clothing and tearing off some buttons and pins. She was forced to lie down on concrete, and each performed an act of sexual intercourse with her. During all three acts, the gun was pressed against her head by one or the other. She described in detail how James held the gun against her ear. They pulled her hair, and Walls talked of killing her. She said, "I was lying there crying. I did not say anything to them. I just laid there crying. I was on my back. I tried to cross my legs. I did not

move. I just laid there. I was crying from disgust and embarrassment . . . ."

Later, while walking to a nearby automobile, a police car passed, and James and the others warned her not to scream or attempt to signal the policemen. The gun was pointed at her during this time. Mrs. Harrington got into the back seat of the car. Walls told her he would shoot her, and James threatened her. After some driving, she was pushed out of the car and fell to the ground, when "I raised my head and got the license number of the car." She then proceeded to the home of Mrs. Marie Black, her mother-in-law, at 64th and Rhodes Avenue. Mrs. Harrington was extensively cross-examined by separate attorneys representing Walls and James.

Mrs. Black testified that Mrs. Harrington was "crying and screaming," and said, "I have been raped." Police Officers Hodges and Roberts responded to a telephone call from Mrs. Black. Officer Hodges described Mrs. Harrington: "Her hair was messed, she was in tears. Her blouse wrinkled, and soiled in the back, the buttons were torn away. Her skirt was wrinkled and soiled in the back."

On the afternoon of July 26, Mrs. Harrington recognized James in a lineup at a police station, and the defendant also pointed out Mrs. Harrington. He had been arrested in a stolen automobile, which had been located through the use of the license number previously noted by Mrs. Harrington.

The husband of Mrs. Harrington, a physical education instructor employed by the Chicago Board of Education, testified that he and the complaining witness were married on January 22, 1957, and, together with their four-year-old son, lived at 8016 South Ingleside. He stated that his wife was in bed when he arrived home at 2:30 a. m. on the morning of July 26.

"We had a slight discussion pertaining to the lateness of the hour. We had guests over whereby I had forgotten it. We had made this date and she was kind of put out about me missing the guests." After getting dressed, she left their home about 3:00 a. m. to go to his mother's.

Defendant James testified that Mrs. Harrington had approached McLain on the street and suggested sexual intercourse with the three as a means of earning a dollar for carfare to get home to her "two kids" at 64th and Rhodes. He stated she voluntarily took off her clothing and had sexual intercourse with all three without any protest. After they had intercourse with her, they walked out of the alley and looked for a cab. Not finding a cab, "we went and picked up this car and came back, blew the horn and she got in. . . ." On cross-examination, James testified he had started the car with tinfoil and did not know who owned it.

Defendant James contends that "in a prosecution for statutory rape, where conviction depends upon the testimony of the prosecuting witness and the crime and its circumstances are denied in toto by the defendant, there should be some corroboration of the testimony of the prosecutrix." (People v. Blockburger, 354 Ill 301, 188 NE 440 (1933); People v. O'Connor, 412 Ill 304, 106 NE2d 176 (1952); People v. Scott, 407 Ill 301, 95 NE2d 315 (1950); People v. Trobiani, 412 Ill 235, 106 NE2d 367 (1952).) In People v. Scott, it is said (p 305):

> "It is a fundamental rule in such cases that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her

will. . . . It is also fundamental that voluntary submission by the female, while she has power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of rape. . . .

"In a rape case, where the charge is denied, in order to sustain a conviction, unless the evidence is clear and convincing, the testimony of the prosecutrix must be corroborated by other facts and circumstances in evidence."

From the foregoing cases, defendant James argues that Mrs. Harrington made no attempt to cry out for help at any time, and that "the testimony of the prosecutrix does not even claim resistance. Resistance may be excused in a rape charge if the prosecutrix is overcome by fear, but we have no *proof* of such fear in this instance. The gun would give us a basis for believing that such fear existed but we do not have the gun."

██ In view of the seriousness of this charge and the penalty imposed, we have very carefully scrutinized the testimony in this record. In a jury trial which covered approximately one week, the jury had ample time to judge the credibility of both the prosecutrix and defendant James, and the weight to be given to the testimony of each of them, and the reasonableness of their testimony considered in the light of all the evidence in the case. The record clearly shows that the testimony of the prosecutrix was unshaken after vigorous and extended cross-examination. Both her mother-in-law and a police officer testified as to her prompt complaint of rape soon after the occurrence. "Testimony of a witness that the victim of rape complained to him is admitted on the theory that it corroborates her own testimony that she was assaulted. It is not hearsay evidence when admitted for this purpose but 'is original evidence of a fact which is

important in rape cases and which cannot be ascertained in any other way.'" (People v. Ardelean, 368 Ill 274, 279, 13 NE2d 976 (1938).) The police officer also testified as to taking her to the scene of the occurrence and finding buttons, which she testified were torn from her clothing by the defendant.

 We conclude that the evidence is clear and convincing and that the testimony of the prosecutrix is amply corroborated by other facts and circumstances in evidence. "When the charge is forcible rape, the fact that the act of intercourse was performed forcibly and against the will of the complaining witness is a necessary element of the crime which must be proved beyond a reasonable doubt. The degree of force exerted by the defendant and the amount of resistance on the part of the complaining witness are matters that depend upon the facts of the particular case. Thus we have held that resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female as where the assailant is armed with a deadly weapon, and that proof of physical force is unnecessary if the prosecuting witness was paralyzed by fear or overcome by superior strength of her attacker." (People v. Faulisi, 25 Ill2d 457, 461, 185 NE2d 211 (1962).) Here, the failure of the prosecutrix to make an outcry or to physically resist, with a gun pointed at her head, is understandable. It is our conclusion that the proof was sufficient to satisfactorily establish defendant's guilt beyond a reasonable doubt.

 Defendant further contends that the "evidence as to the auto theft was incompetent and created prejudicial error." We agree with defendant that "a separate and distinct offense cannot be proven in support of a prosecution for another offense." However, "evidence that tends to prove motive or intent, identity, knowledge, absence of mistake or accident,

232

and the like, is admissible although it may also involve proof of a separate and distinct offense by the accused." (People v. Harvey, 12 Ill2d 88, 91, 145 NE2d 88 (1957).) "The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged and any circumstances may be put in evidence which tend to make the proposition at issue either more or less probable. . . . where evidence is relevant and otherwise admissible, it is not to be excluded because it may also have a tendency to prejudice the accused." People v. Galloway, 28 Ill2d 355, 360, 192 NE2d 370 (1963).

We believe the evidence concerning the stolen car was relevant because it was a circumstance which led to the arrest of the defendant and his identification. The prosecutrix remembered the license number as the number of the car driven by defendant James. A mechanic testified that he had had custody of such a car, which was missing on the morning of July 26. When the car was found, defendant James was in it. We find no error here.

Our review of this record satisfies us that defendant's guilt was proved beyond a reasonable doubt, and that he received a fair trial, free from prejudicial error.

For the reasons given, the judgment of the Criminal Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur