THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RALPH CALHOUN *et al.*, Defendants-Appellants.

Third District    No. 76-163

Opinion filed February 25, 1977.—Rehearing denied April 13, 1977.

Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellants.

Charles R. Zalar, State's Attorney, of Morris (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendants Ralph Calhoun, David Chapman and Jerry Wren were convicted of possessing a controlled substance (amobarbital) and possessing and manufacturing cannabis in violation of section 402 of the Illinois Controlled Substances Act and sections 4(d) and 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, pars. 1402(b), 704(d) and 705(d)), respectively, following a jury trial in the Circuit Court of

Grundy County. No conviction was entered on the cannabis possession charge because it was a lesser included offense of manufacturing but each defendant was sentenced to concurrent terms of one to three years for the two remaining convictions. The following issues are presented on appeal: (1) whether the defendants were properly found guilty of possessing a controlled substance; (2) whether the State may aggregate various lots of cannabis to determine the amount manufactured; and (3) whether soil and paper mixed in with the cannabis was properly included in determining the weight of the "substance containing cannabis." Defendants also raise a fourth issue relating to the trial court's refusal to honor the jury's request for a transcript.

Police Chief Ingram testified that he initiated a surveillance of an apartment in Coal City in connection with an attempted burglary of a restaurant on August 8, 1974. The surveillance, which was directed at defendant Chapman, was subsequently discontinued until August 20 or 21.

Ingram testified that from about midnight until the early morning of August 22 he and Officer Hummel resumed their surveillance of the apartment from the second floor of a building next door. Sometime during the night Chapman stepped out of the kitchen onto the back porch. When he re-entered the apartment he left the door partially open which permitted the police to survey a portion of the kitchen. From these two vantage points the officers observed each defendant enter the kitchen at various times during the night and turn or stir a green leafy plant material, which was in a bowl set underneath a heat lamp. Ingram testified that at one point Chapman entered the kitchen, placed newspaper on a scale, put substance from the bowl onto the paper and wrapped a package. He also testified that he observed the three defendants pass a cigarette among themselves. Ingram and a group of officers subsequently went to the apartment to effect arrests.

In the kitchen police saw opened and folded newspapers, plants on top of some newspapers, the bowl, and within two to five feet of the bowl, a mortar and pestle. The pestle contained a light green substance identified at the trial by Gloria Kraatz, a supervising criminalist with the Illinois Department of Law Enforcement, as amobarbital, a barbiturate and controlled substance. Elsewhere in the apartment police found a heat lamp, a gram scale, more packages of the green plant substance and a pill box allegedly containing amphetamines. There was no reference in the indictment to the amphetamines. There was also no evidence that any of the defendants touched the mortar and pestle and no fingerprints were taken from them.

At the time of arrest only the three defendants and Ralph Calhoun's young son were present at the apartment. Ingram testified that he thought

Calhoun and Chapman lived in the apartment, but Vickie Calhoun, defendant Calhoun's ex-wife, testified that she was the lessee and lived alone there with her son. Defendant Calhoun explained that he was caring for his son while Vickie went to work and that the other defendants had accompanied him to her apartment for dinner. Although Chief Ingram stated that he had observed Calhoun and Chapman enter the apartment on various dates during the period of surveillance, both defendants testified they lived elsewhere. Defendant Wren was a resident of Texas.

All three defendants admitted that they saw the bowl and plant material, that they suspected the material was cannabis, and that they probably touched the bowl and its contents. Vickie Calhoun was called as a witness but refused to answer the question, "Who did the plant material and pills belong to?" After she was given immunity from both State and Federal prosecution, Vickie testified that she had told Detective Fox she felt the defendants were trying to "frame" her. Fox testified that Vickie Calhoun also told him there were no drugs in the apartment when she left for work on the night of August 21.

Ms. Kraatz testified that the green plant material contained cannabis sativa and that the various lots of cannabis found in the apartment weighed 340.1 grams or less than one pound.

■■ Defendants were convicted of knowingly possessing amobarbital in violation of section 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1402). In *People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, 372, *cert. denied*, 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665, (1964), the supreme court stated:

> "To support a conviction of the crime of unlawful possession of narcotic drugs the People must prove not only that the accused had knowledge of the presence of the narcotics, but also that they were in his immediate possession and control."

■■ A person's possession of narcotics may be either actual or constructive. (*People v. Kissinger* (3d Dist. 1975), 26 Ill. App. 3d 260, 325 N.E.2d 28.) Actual possession requires an act of physical dominion over the narcotics (*People v. Howard* (4th Dist. 1975), 29 Ill. App. 3d 387, 330 N.E.2d 262), while constructive possession requires a showing that the defendant controlled the premises upon which the narcotics are found. (*People v. Mosley* (3d Dist. 1971), 131 Ill. App. 2d 722, 265 N.E.2d 889.) Mere physical proximity to the narcotics is insufficient to establish actual possession (*Howard*) and mere presence on the premises does not create an inference of control over them (*Mosley*). Furthermore, under *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, proof of constructive possession requires evidence that the defendant was in control of the premises where the narcotics are found.

■■ Whether there is possession and knowledge are both questions of

fact to be determined by the jury, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370, *cert. denied*, 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665 (1964).) In this case there was no evidence that any of the defendants touched the mortar and pestle containing the controlled substance, and no fingerprints were found. The fact that defendants were seen handling the bowl containing cannabis, which was two to five feet from the mortar and pestle, shows their proximity to the amobarbital but does not establish their actual possession of it. See *People v. Howard.*

Moreover, while Ingram testified that he thought Chapman and Calhoun lived in the apartment, Vickie Calhoun's testimony refuted his statements. All parties agreed that Wren definitely did not live in the apartment. In addition, Calhoun and Chapman's testimony that they lived elsewhere is corroborated by the fact that none of their personal effects were in the apartment. *People v. Pugh* (1967), 36 Ill. 2d 435, 223 N.E.2d 115.

The State offers two theories to support the controlled substance convictions. The first is that, since the defendants had actual control of the cannabis, the jury could infer their actual control of the amobarbital as well. The second contention is that once Vickie left her apartment for work the defendants had temporary control of the premises and constructive possession of the amobarbital.

■■ The State's first theory is unpersuasive in light of the rule that the substance of one crime can not be proved by showing the substance of another crime. (*People v. Allen* (1937), 368 Ill. 368, 14 N.E.2d 397, *cert. denied*, 308 U.S. 511, 84 L. Ed. 436, 60 S. Ct. 132 (1939); *People v. James* (1st Dist. 1965), 62 Ill. App. 2d 225, 210 N.E.2d 804.) The State cannot prove constructive possession of amobarbital by evidence of actual possession of cannabis.

■■ In connection with its second contention, the State seeks to distinguish the cases of *People v. Pugh* (1967), 36 Ill. 2d 435, 223 N.E.2d 115, and *People v. Heerwagen* (3d Dist. 1975), 30 Ill. App. 3d 144, 332 N.E.2d 136, on the basis that the defendants in those cases were passively present, while the defendants here were actively manufacturing cannabis. Again this seeks to prove one crime by evidence of another crime. Furthermore, the evidence was insufficient to establish that control of the premises had been temporarily turned over to defendants. The cases cited by the State are all distinguishable. In both *People v. Holt* (1963), 28 Ill. 2d 30, 190 N.E.2d 797, *cert. denied*, 375 U.S. 866, 11 L. Ed. 2d 93, 84 S. Ct. 138 (1963), and *People v. Fox* (1963), 24 Ill. 2d 581, 182 N.E.2d 692, the defendant admitted his ownership of the narcotics. In *People v.*

*Davisson* (4th Dist. 1976), 35 Ill. App. 3d 887, 342 N.E.2d 456, the drugs were discovered in the coat of defendant's wife but the court found evidence to show he had forced her to carry them. Therefore, the defendants' convictions. for possessing a controlled substance are reversed.

The defendants were also convicted and sentenced for manufacturing cannabis in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 705(d)). Section 5 graduates the penalty for the offenses of possession and manufacturing or delivery of cannabis according to the amount of contraband seized. Proof of weight of the contraband is therefore an essential element of the offense. People's Exhibit No. 10 represents the aggregate weight (340.1 grams) of cannabis found in the entire apartment, and the defendants contend that such aggregation is impermissible.

The only case we can find which is even remotely similar to the present one is *People v. Spear* (4th Dist. 1974), 24 Ill. App. 3d 818, 321 N.E.2d 705. In *Spear*, the court upheld the defendant's conviction and sentence for the unlawful manufacture of cannabis despite the fact that 15 separate items of marijuana were aggregated in determining the quantity of the substance containing cannabis. Although the aggregation issue was not directly raised by the defendant in *Spear*, we fail to see why aggregation of odd lots of cannabis is improper where the State successfully connects each one with the defendants.

■■ ■ We rejected the State's theory that the jury might infer defendants' possession of a controlled substance based on the evidence relating to the cannabis in the kitchen because this evidence in no way demonstrated their actual or constructive possession of the amobarbital. On the other hand, the evidence did show that defendants were in actual possession of the cannabis in the kitchen, that they were processing or manufacturing such cannabis and that there was no drug activity or drugs present in the apartment until after Vickie Calhoun departed for work. In our opinion, this evidence permitted the jury to infer defendants' actual control over the remaining cannabis found in the apartment. Moreover, while the defendants denied they were manufacturing cannabis and asserted the drugs were already present in the apartment when they arrived, we think the jury was entitled to reject this testimony. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370, *cert. denied*, 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665 (1964).) We therefore hold that it was proper for the State to aggregate the lots of cannabis found in the apartment.

■■ We also reject the defendant's contention that bits of paper and soil which were mixed together with the cannabis were improperly used for purposes of determining the weight of the "substance containing

cannabis." (See Ill. Rev. Stat. 1975, ch. 56½, par. 705.) In *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97, the graduated penalty provisions of section 5 of the Cannabis Control Act based on the amount of a "substance containing cannabis" were held to be constitutional because the supreme court recognized that cannabis is marketed in an impure state. Although the defendants urge that *Mayberry* only dealt with cannabis additivies, we do not view the decision to be so limited.

The defendants were charged with possession and manufacture of more than 30 but less than 500 grams of a substance containing cannabis. (See Ill. Rev. Stat. 1975, ch. 56½, par. 705(d).) The weight of the substance containing cannabis was determined to be 340.1 grams. Assuming arguendo that the defendants' interpretation of *Mayberry* is correct, we still cannot assume that the absence of paper and bits of soil from the contraband seized here would have reduced its weight to less than 30 grams. In any event, since we conclude that the State may determine the weight of the contraband based on its condition at the time it is seized or discovered, it follows that the State established each and every element of the offense of manufacturing cannabis and that the convictions in this case were proper.

■■ As mentioned at the outset, defendants raise a fourth issue relating to the trial court's refusal to honor the jury's request for a transcript. It is sufficient to note that the trial judge both recognized and exercised his discretion in the matter, so that no error or abuse of discretion resulted. (*Cf. People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577; *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) Furthermore, even if the judge had abused his discretion, the error would be harmless in light of the overwhelming evidence of guilt on the manufacturing charge, and our disposition of the controlled substances count.

Accordingly, the convictions for possession of a controlled substance are reversed, and the convictions for manufacture of cannabis are affirmed.

Reversed in part; affirmed in part.

ALLOY and SCOTT, JJ., concur.