MARVIN HUTCHERSON *v.* STATE OF INDIANA

[No. 2-1076A384. Filed October 16, 1978. Rehearing denied November 22, 1978. Transfer denied April 20, 1979.]

*Lawrence O. Sells*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Terry G. Duga*, Deputy Attorney General, for appellee.

YOUNG, J.—The appellant, Hutcherson, was charged by information with possession of over ten grams of heroin. The case was tried to a jury and the appellant found guilty. The judge sentenced him to a determinate term of eight years, whereupon Hutcherson perfected this appeal.

Hutcherson challenges the sufficiency of the evidence supporting his conviction on two grounds. First, the State did not adequately prove possession, and second, the State failed to prove that the amount of heroin in question was over ten grams. With regard to the former we affirm. With regard to the latter we reverse and remand for resentencing.

## I.

When determining the sufficiency of evidence, this Court will neither weigh the evidence nor determine credibility, but will look only to the evidence favorable to the judgment and all reasonable inferences arising therefrom. If there is substantial evidence of probative value in support of each element, the judgment will not be disturbed. *Harris v. State* (1978), 268 Ind. 594, 377 N.E.2d 632.

The evidence most favorable to the State is that on November 7, 1975, four or five police officers went to a certain residence to serve a search warrant for heroin. In response to their knock, a woman within drew aside the curtain behind the glass door and looked out. An officer held his badge up to the glass and said, "police officers, we have a search warrant." The woman backed up, turned, and ran towards the kitchen in the back of the house yelling "Marvin, its the police." The officers kicked in the door and followed her. In the kitchen they saw Hutcherson and two others, a man and a woman. Hutcherson and the man turned and ran up the stairs leading from the kitchen, with two officers following closely behind. Hutcherson was found "hiding" in a darkened bedroom, and the other was in the bathroom from which came sounds of the toilet flushing. The officer in pursuit found the man sitting on the edge of the bathtub using the telephone, and three aluminum foil bindles in the toilet.

The officers brought the two men downstairs and assembled everyone present in the house in the living room. There they read the warrant before commencing their search. The officers found a cigarette package on the kitchen table containing a brown powder which field tested as an opium derivative. They also found a record album cover with a powdery substance on it that "appeared" to be heroin. The album cover was in the kitchen sink with hot water running over it. The powder was not tested. Hutcherson was then informed of his rights and asked for identification information. He gave that residence as his address. Further testimony at trial disclosed that the woman who answered the door lived at that residence, that Hutcherson was her boyfriend and supported her, and that he had a key to the residence. The police chemist found the substance in the cigarette package to be heroin. On the basis of this evidence Hutcherson was found guilty of possession.

Possession of a controlled substance may be actual or constructive. Where a conviction is based on the latter, there must be evidence showing the accused's "intent and capability to maintain control and dominion" over the substance. *Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557; *Mills v. State* (1978), 177 Ind.App. 432, 379 N.E.2d 1023. Proof of a possessory interest in the premises where a controlled substance is found is adequate to show capability to control. *Mills v. State, supra; Corrao v. State* (1972), 154 Ind.App. 525, 290 N.E.2d 484. The element of intent is proved by evidence of the accused's knowledge of the nature of the substance and its presence. *Thomas v. State, supra; Mills v. State, supra.* This element may be inferred where possession and access to the premises is exclusive; otherwise there must be additional circumstances in evidence supporting the inference. *Mills v. State, supra; Johnson v. State* (1978), 176 Ind.App. 567, 376 N.E.2d 542; *Martin v. State* (1978), 175 Ind.App. 503, 372 N.E.2d 1194.

In the present case we find there was adequate evidence to show Hutcherson had a possessory interest in the premises. Since a number of people also had access to the heroin, possession of the premises alone does not raise an inference of knowledge. However, the evidence shows that Hutcherson was standing in the kitchen where the cigarette package containing the heroin was on the table in plain view. An album cover with what appeared to be heroin on it was in the kitchen sink with hot water running over it, also in plain view, when the police entered the kitchen. Considering in addition Hutcherson's flight and attempt to conceal himself in response to the warning cry of his girlfriend, we feel that the jury could reasonably infer that he knew of the presence and character of the heroin. Hutcherson relies on *Bradley v. State* (1972), 153 Ind.App. 421, 287 N.E.2d 759, for the proposition that flight alone is insufficient to sustain a conviction. We agree. *See Keaton v. State* (1978), 177 Ind.App. 547, 380 N.E.2d 587; *Henderson v. State* (1977), 173 Ind.App. 505, 364 N.E.2d 175. However, we cannot presume that the jury relied solely on the evidence of flight in finding Hutcherson guilty. *Henderson v. State, supra.* As discussed above, proof of constructive possession may be accomplished by showing either exclusive possession of the premises where a controlled substance is found, or non-exclusive possession and other circumstances supporting the inference of knowledge. Flight figures here as one of the "other cir-

cumstances," and may properly be considered in the context of the evidence as a whole. *See Johnson v. State* (1978), 176 Ind.App. 567, 376 N.E.2d 542; *Martin v. State* (1978), 175 Ind.App. 503, 372 N.E.2d 1194; and *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412.

## II.

Hutcherson's conviction and sentence rest on his constructive possession of the heroin found in the cigarette package on the kitchen table. The police chemist testified that the total weight of the brown powder inside the cigarette package was 10.98 grams, and that the powder contained heroin. When asked how much heroin was in the powder, he responded that a quantitative test was not performed. On cross-examination, the chemist admitted that in his experience such mixtures could be as little as ten percent heroin, and that he knew the present specimen did not contain ten grams of pure heroin.

The statute in question, I.C. 1971, 35-24.1-4.1-6(b) (Burns Code Ed.), provides:

> Possession of a controlled narcotic substance is a felony punishable by a determinate term of imprisonment of not less than five [5] years nor more than twenty [20] years and a fine not to exceed five thousand dollars [$5,000], if the amount of the controlled narcotic substance involved is an aggregate weight of ten [10] grams or more. . . .

The issue before us, then, is whether this statute requires that the State prove possession of more than ten grams of pure heroin or prove possession of more than ten grams of a mixture containing heroin, in order for the enhanced penalty to be imposed.

In construing the meaning of this statute, we are mindful that "[i]n cases of statutory interpretation this Court must give consideration to the consistency of all sections and to the logical meaning of the language. A statute which is specific and unambiguous must be held to its plain meaning." *Lindley v. State* (1978), 268 Ind. 83, 373 N.E.2d 886, 888.

> We are controlled, therefore, by the express language of the statute itself and applicable rules of statutory construction, the objective of such rules being to determine and effect the intent of the

Legislature. *State v. Gilbert* (1966), 247 Ind. 544, 219 N.E.2d 892; *Kirby v. Indiana Employment Security Board* (1973), 158 Ind.App. [643], 304 N.E.2d 225. However, in so doing, we are also required to prevent absurdity and hardship and to favor public convenience. *State v. Rice* (1956), 235 Ind. 423, 134 N.E.2d 219.

*Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173, 176.

The State, relying on *People v. Calhoun* (1977), Ill.App., 361 N.E.2d 55, argues that the aggregate weight of a controlled substance includes the mixers combined with the pure drug, as it is in this form that the substance is commonly sold and used. We note, however, that the Illinois statute in question based its graduated penalties on the amount of a "substance containing cannabis." *See* Ill. Rev. Stat. 1975, ch. 56-½, par. 705. The absence of this kind of language in the Indiana statute is particularly conspicuous in light of the Indiana Controlled Substances Act viewed as a whole.

In the definitions section, I.C. 1971, 35-24.1-1-1(e) (Burns Code Ed.), "Controlled Substance" is defined as a "drug, substance or immediate precursor in Schedules I through V . . . ." In subsection (p)(1), "narcotic drug" includes "[o]pium and opiate, and any salt, compound, derivative, or preparation of opium or opiate." Heroin is a Scheduled I substance: I.C. 1971, 35-24.1-2-4(c)(9) includes in Schedule I "[a]ny of the following opium derivatives, their salts, isomers and salts of isomers . . . :

. . .

(9)   Heroin. . . ."

Thus, heroin is a narcotic drug within the definition, and is a controlled substance by virtue of its inclusion in Schedule I. We note that the Schedule I reference to opium derivatives does not contain any language similar to the "substances containing" language of the Illinois statute applied in the *Calhoun* decision. That the Legislature could have included such language if it so wished is evident from the next subsection of Schedule I. I.C. 1971, 35-24.1-2-4(d) includes in Schedule I "[a]ny material, compound, mixture or preparation *which contains any quantity of* the following hallucinogenic, psychedelic, or psychogenic substances, their salts, isomers and salts of isomers . . . ." (emphasis added). The absence

of this language with reference to heroin clearly indicates that it is the heroin itself which is controlled, not the innocuous substances with which it may be mixed.

We do not believe that the terms "aggregate weight" in the statute penalizing possession were meant to include non-controlled substances.[1] Rather, the language permits all the controlled substance found in an accused's possession to be weighed together for purposes of applying the penalty, regardless of whether it was found together or found in smaller, separate amounts. Again, viewing the Controlled Substances Act as a whole confirms this interpretation. There is a clear pattern of specificity throughout the sections penalizing unlawful dealing. Unlike the unlawful possession sections, each expressly defines unlawful dealing in a controlled substance as involving the substance in question in its pure or adulterated form. *See, e.g.* I.C. 1971, 35-24.1-4.1-1 (Burns Code Ed.) ("a person is guilty of unlawful dealing in a controlled narcotic substance if he:   (1) knowingly manufactures or delivers a controlled substance, pure or adulterated, classified in Schedule I or II which is a narcotic drug . . . ."). Thus it is clear that if the Legislature had intended to include the non-controlled substances used as mixers with heroin in determining aggregate weight, it would have expressly done so. Since it did not, we must conclude that such a construction of the statute was not intended.

The uncontradicted evidence is that the substance found to be in Hutcherson's constructive possession did not contain ten grams of pure heroin, therefore the State failed to sustain its burden of proving possession of more than ten grams of heroin. Because the State failed to prove an essential element of the offense charged, this Court has the power under Indiana Rules of Procedure, Appellate Rule 15(N), to order that the judgment of conviction be modified to that of possession of less than

---

1.   There is some case law to the contrary, *see, e.g., People v. Brannon* (1977), 54 A.D.2d 34, 394 N.Y.S.2d 974, 981 ("The words 'aggregate weight' mean that pure narcotics may be combined with other uncontrolled substances to reach an 'aggregate weight.' "). However, a conviction in those cases involves proof of a certain amount *containing* a narcotic drug, and thus they are distinguishable.

ten grams, and that the defendant-appellant be sentenced accordingly. *Lane v. State* (1978), 175 Ind.App. 543, 372 N.E.2d 1223. Although Hutcherson's sentence for possession of more than ten grams falls within the range applicable for possession of less than ten grams, we have no way of knowing how a conviction of one rather than the other would affect sentencing.

Therefore we remand with instructions to vacate the judgment and sentence as to the offense of possession of over ten grams of a controlled narcotic substance, and to enter judgment on the necessarily lesser included offense of possession of less than ten grams of a controlled substance, and to impose sentence accordingly.

Lybrook, P.J., concurs (sitting by designation).

Robertson, J., concurs (sitting by designation).

NOTE—Reported at 381 N.E.2d 877.

## ON PETITION FOR REHEARING

YOUNG, J.—The State petitions for rehearing on the ground that a new question of law was erroneously decided, namely in construing I.C. 1971, 35-24.1-4.1-6(b) (Burns Code Ed.) as referring to heroin, and not a substance containing heroin. It is our duty to construe criminal statutes strictly against the State and in favor of the accused. *Utley v. State* (1972), 258 Ind. 443, 281 N.E.2d 888; *Coleman v. State* (1970), 253 Ind. 627, 256 N.E.2d 389. This rule of strict construction means that criminal statutes "will not be enlarged by implication or intendment beyond the fair meaning of the language used, and will not be held to include offenses and persons other than those which are clearly described and provided for. . . . ." *Kelley v. State* (1954), 233 Ind. 294, 298, 119 N.E.2d 322, 324.

Petition for Rehearing denied.

Lybrook, P.J., concurs (sitting by designation).

Robertson, J., concurs (sitting by designation).

NOTE—Reported at 382 N.E.2d 983.