**Larry B. JONES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–1281A421.**

Court of Appeals of Indiana, Second District.

June 1, 1982.

---

Andrew P. Sheff, Bennett & Sheff, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Larry B. Jones (Jones) appeals from a conviction by the court of possession of more than thirty grams of marijuana, challenging the sufficiency of the evidence: He claims that only "pure" marijuana could be taken into account in determining whether he possessed more than thirty grams, the amount necessary to elevate the offense from a Class A misdemeanor to a Class D felony. Jones also assails the trial court's actions in limiting cross-examination and making a certain remark.[1]

We affirm.

## FACTS

The evidence most favorable to the State discloses that on July 30, 1981, Indianapolis Police Officers Robert Morrison (Morrison) and Ralph Smith (Smith) responded to a complaint indicating that drugs were being sold in the alley east of the 2200 block of Pennsylvania Street. There, the officers saw Jones approach a car which had entered the alley, converse with the driver, produce a packet from a brown paper bag, and hand the packet to the driver in exchange for cash. This sequence was repeated four times. Suspecting that Jones was selling marijuana, Morrison and Smith advanced toward him. Upon seeing the officers' squad car, Jones dropped the brown paper bag. The officers apprehended Jones and retrieved the bag; inside were more than forty manila envelopes containing suspected marijuana.

Dirk Shaw (Shaw), a forensic chemist employed by the Indianapolis Police Department, offered expert testimony concerning the identity of the seized substance. He stated that he first subjected the contents of each manila envelope to microscopic examination; each packet appeared to contain pure marijuana. He then combined the contents of the various packets into one mass, which weighed 102.28 grams. Two qualitative tests—a thin layer chromatograph and a Duquenois-Levine test—were performed on a sample of the mass. These tests confirmed the presence of marijuana. It was Shaw's unequivocal opinion, based upon the tests he conducted, that the confiscated substance consisted of 102.28 grams of marijuana, "there [being] no other substance present." *Record* at 103.

Jones's attorney, in an attempt to "explor[e] exactly what a qualitative analysis means," asked the following hypothetical question of Shaw on cross-examination:

> If I had ten pounds of sugar, ten pounds of salt, a pound of heroine [sic] and a pound of cocaine and mixed them up into a nice big bundle, a test of the nature of a Duquenois-Levine test for heroine [sic] would show what?

*Id.* at 87.

The trial court, after sustaining the State's objection to the question, made the following comment in response to argument by Jones's attorney: "He's [Shaw] answered the question between qualitative and quantitative, I don't see any reason to pursue this line of questioning but if you want to take up the Court's time then go ahead." *Id.* at 88. Jones's attorney made no objection to the remark. He proceeded to cross-examine Shaw at length concerning the qualitative tests performed on the confiscated substance.

From his conviction of possession of more than thirty grams of marijuana, Jones appeals.

## ISSUES

Jones raises three issues:[2]

---

1. Jones further claims that he was denied the presumption of innocence. Because this argument mirrors those raised in connection with other issues, we do not address this issue separately.

2. The issues have been restated in the interest of clarity.

1. Was the evidence sufficient to support his conviction of possession of more than thirty grams of marijuana?

2. Did the trial court err in refusing to permit Jones's attorney to cross-examine Shaw as to the hypothetical result of a qualitative test for heroin?

3. Did the court err in commenting, "I don't see any reason to pursue this line of questioning but if you want to take up the Court's time then go ahead," after sustaining the State's objection to the aforementioned hypothetical question?

## DECISION

ISSUE ONE—Was the evidence sufficient to support Jones's conviction of possession of more than thirty grams of marijuana?

PARTIES' CONTENTIONS—Emphasizing that Officers Morrison and Smith offered conflicting testimony as to the number of people they observed in the alley, Jones assails the evidence as being insufficient to establish that he, rather than a companion, was in possession of the brown paper bag. Jones also argues, based on this court's decision in *Hutcherson v. State*, (1978) Ind.App., 381 N.E.2d 877, that only the portion of the confiscated substance comprising "pure" marijuana could be taken into account in determining how much marijuana he possessed. Because no quantitative chemical tests were performed to ascertain the percentage of adulterants and diluents in the 102.28-gram mass, the evidence was insufficient as a matter of law to prove that Jones possessed more than thirty grams of marijuana, the amount necessary to elevate the offense of possession of marijuana from a Class A misdemeanor to a Class D felony.

The State responds that the evidence was sufficient as to the elements of possession and amount.

CONCLUSION—The evidence was sufficient to support Jones's conviction.

█ It is no secret that in reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value supporting the verdict, the conviction will not be set aside. *Jones v. State*, (1978) 268 Ind. 640, 377 N.E.2d 1349; *Johnson v. State*, (1981) Ind. App., 419 N.E.2d 232.

█ Jones's contention that the evidence was insufficient to establish the element of possession is baseless. Notwithstanding any disagreement as to the number of Jones's accomplices, both Morrison and Smith testified unwaveringly that it was Jones who held the brown paper bag containing packets of marijuana. That he dropped the bag to the ground upon seeing the squad car in no way negates the element of possession. As our supreme court said in *Spright v. State*, (1970) 254 Ind. 420, 429, 260 N.E.2d 770, 775, a similar appeal from a conviction for possession of marijuana: "The mere fact that appellant was attempting to divest himself of possession of the packet could not mean that he had in fact done so, so as to relieve himself of all responsibility therefor."

Also without merit is Jones's argument that the State failed to prove he possessed more than thirty grams of marijuana. He correctly reminds us that the various sections of the Controlled Substances Act [Act] which define *dealing* in a controlled substance refer to the substance in its "pure or adulterated" form. By contrast, the sections penalizing *possession* of a controlled substance omit the adjectives "pure or adulterated" in making reference to the substance. The sections pertaining to marijuana are representative. The dealing statute, IC 35–48–4–10, applies to one who

(1) knowingly or intentionally manufactures or delivers marijuana, hash oil, or hashish, *pure or adulterated* ; or

(2) possesses, with intent to manufacture or deliver, marijuana, hash oil, or hashish, *pure or adulterated* . . . .

(Emphasis supplied.)

The possession statute, IC 35–48–4–11, applies to one who

(1) knowingly or intentionally possesses marijuana, hash oil, or hashish;

(2) knowingly or intentionally grows or cultivates marijuana; or

(3) knowing that marijuana is growing on his premises, fails to destroy the marijuana plants . . . .

In *Hutcherson v. State*, (1978) Ind.App., 381 N.E.2d 877, *trans. denied*, an appeal from a conviction for possession of heroin, this court concluded that because the legislature excluded from the relevant possession statute the adjectives "pure or adulterated," only that portion of a confiscated mixture comprising *pure* heroin—not all of the mixture, however impure—could be considered in proving the amount of heroin in an accused's possession.

The court offered the following rationale for its decision:

There is a clear pattern of specificity throughout the sections penalizing unlawful dealing. Unlike the unlawful possession sections, each expressly defines unlawful dealing in a controlled substance as involving the substance in question in its pure or adulterated form. *See, e.g.* I.C. 1971, 35–24.1–4.1–1 (Burns Code Ed.) ("a person is guilty of unlawful dealing in a controlled narcotic substance if he: (1) knowingly manufactures or delivers a controlled substance, pure or adulterated, classified in Schedule I or II which is a narcotic drug . . . ."). Thus it is clear that if the Legislature had intended to include the non-controlled substances used as mixers with heroin in determining aggregate weight, it would have expressly done so. Since it did not, we must conclude that such a construction of the statute was not intended.

*Id.*, 381 N.E.2d at 881.

Transfer was denied in *Hutcherson*. And the Indiana Supreme Court applied the *Hutcherson* rule in *Hall v. State*, (1980) Ind., 403 N.E.2d 1382, an appeal from a conviction for delivery of cocaine. *Hutcherson* was also followed in *Grogg v. State*, (1981) Ind.App., 417 N.E.2d 1175, an appeal to this court from a conviction of delivery of marijuana. Furthermore, the legislature in 1979 amended IC 35–48–4–6, the section covering possession of cocaine and narcotic drugs, including heroin, by reducing from ten grams to three grams the amount necessary to elevate the offense from a Class D to a Class C felony. It is arguable that this change represents a legislative response to *Hutcherson's* purity requirement.

■ While *Hutcherson* dealt with possession of heroin, we read the case and cases in its line of descent as imposing a purity requirement in analogous marijuana possession cases. Thus, Jones is correct in asserting that only the portion of the confiscated substance consisting of pure marijuana, that is, marijuana as defined by IC 35–48–1–1,[3] could be taken into account in determining whether to convict him of the basic offense of possession (a Class A misdemeanor) or the aggravated offense (a Class D felony); the latter requires proof that the amount involved was in excess of thirty grams.

■ But he is incorrect in his insistence that the purity of the drug was demonstrable *only* by quantitative chemical analysis. The *Hutcherson* court did not specify quantitative chemical analysis as the sole method by which purity could be proven. Indeed, it was not faced with the question of how to establish purity, for the police chemist in that case testified without contradiction that the compound in question did *not* contain ten grams of pure heroin—the amount necessary under the prior version of IC 35–48–4–6 to elevate the offense of possession of heroin from a Class D to a Class C felony. Here, by contrast, Shaw testified

---

**3.** The statute provides: "Marijuana" means any part of the plant genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and hash oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant; fiber produced from the stalks; oil or cake made from the seeds of the plant; any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom); or the sterilized seed of the plant which is incapable of germination.

without contradiction or equivocation that the confiscated substance consisted of 102.-28 grams of marijuana, "there [being] no other substance present." *Record* at 103. Considering his testimony in the light most favorable to the State, there is a reasonable inference that the marijuana in question was pure.

ISSUE TWO—Did the trial court err in refusing to permit Jones's attorney to cross-examine Shaw as to hypothetical result of a qualitative test for heroin?

PARTIES' CONTENTIONS—Jones claims that the trial court's action amounted to an abuse of discretion because it deprived him of the right to inquire into the nature of the qualitative tests performed on the confiscated mass. The State responds that the court properly exercised its discretion and that in any event, Jones has failed to show that the court's action prejudiced him in any way.

CONCLUSION—The trial court did not err in limiting cross-examination.

 The trial court has broad discretionary power to control the conduct of cross-examination, *Strickland v. State*, (1977) 265 Ind. 664, 359 N.E.2d 244; *King v. State*, (1979) Ind.App., 397 N.E.2d 1260, including the use of hypothetical questions as a means of eliciting expert opinion. *See Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686. This exercise of discretion will only be reviewed for abuse. *Strickland, supra; King, supra.*

The trial court, after excluding the hypothetical question, permitted Jones's attorney to cross-examine Shaw at length and without restriction concerning the qualitative tests performed on the marijuana. Consequently, Jones's claim that the court's action foreclosed his inquiry into the nature of qualitative analysis is without any factual basis. The trial court did not err.

ISSUE THREE

We have not included the parties' contentions concerning the trial court's allegedly improper comment because this issue is waived. Jones failed to lodge any objections to the statement at trial. "[T]o preserve a question on appeal concerning improper judicial remarks, counsel must make proper objection and request the proper remedy from the trial court." *Coleman v. State*, (1980) Ind.App., 409 N.E.2d 647, 649. *Accord, Micks v. State*, (1967) 249 Ind. 278, 230 N.E.2d 298.

Judgment affirmed.

SHIELDS and SULLIVAN, JJ., concur.