Joey SNYDER, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 2-783A227.

Court of Appeals of Indiana,
Second District.

Feb. 29, 1984.

Rehearing Denied April 17, 1984.

John W. Forcum, Hartford City, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge (Writing by Designation).

## STATEMENT OF THE CASE

Defendant-appellant Joey Snyder (Snyder), was convicted by a Blackford Circuit Court jury of the offense of possession of more than thirty grams of marijuana under IND.CODE 35–48–4–11(1). From an executed sentence of two years, he appeals.

We affirm.

## STATEMENT OF THE FACTS

Hartford City Police officers arrested one Dalton (Pete) Hood for burglary. After confessing, and in hope and expectation of leniency, he and his brother-in-law, Jeff Johns, volunteered information and executed search warrant affidavits stating that they had visited Snyder's apartment on June 12, 1981. While there, they had seen a garbage bag in plain view containing a large amount of marijuana. The affidavits stated that they had purchased marijuana from Snyder in that apartment on that occasion, as well as previous occasions. Thereafter, on the same day, June 17, 1981, an extensive probable cause hearing was conducted in Circuit Court in which Hood and Johns testified before the judge. The hearing produced substantially the same information as contained in the affidavits. At the conclusion thereof the Blackford Circuit Court judge determined that probable cause existed and issued a search warrant for the search of Snyder's apartment for contraband. The officers who executed the warrant, found the apartment as described by Hood and Johns, and they were admitted to the apartment by Snyder who possessed a key to it. The search revealed one large garbage bag in plain view in a bedroom; the bag contained 24 pre-weighed and packaged baggies of marijuana. Another garbage bag containing loose marijuana was discovered draped over a clothes hanger rod in a closet of another bedroom. The total amount of marijuana weighed 445 grams and had an estimated street value of $35,000.00. Snyder was the single known occupant of the apartment and possessed the only key. He had rented it on June 1, 1981, and had paid cash in advance. Also found in the apartment during the search was an additional supply of baggies, a set of scales calibrated to milligrams, and other small amounts of marijuana. Johns, who testified at the trial, stated that on his previous visitations to Snyder's apartment he had seen a pistol and large amounts of cash.

Snyder was charged with possession of marijuana in an amount in excess of 30 grams. He filed a pre-trial motion to suppress the evidence obtained by the search warrant, and at the hearing on that motion, conducted on October 27, 1981, Hood recanted his probable cause testimony and affidavit. Johns did not. However, a year later, while Johns was in jail, in a pre-trial deposition, he recanted his probable cause affidavit and testimony. That deposition, as well as the testimony in his first hearing, was made the subject of a second motion to suppress, which was also overruled. Nevertheless, at trial Johns testified in accordance with his original probable cause testimony and affidavit. He testified on dealing marijuana with Snyder in that apartment, and seeing the scales, bags, pistol, quantity of money, and as much as three or four large garbage bags of marijuana at one time.

## ISSUES

Snyder raises two issues on appeal:

I. Whether the State failed to prove actual or constructive possession of the marijuana on Snyder; and

II. Whether the trial court erred in admitting evidence that was the fruits of the search warrant which was shown to be defective and not supported by truthful testimony.

### DISCUSSION AND DECISION

*Issue I: Possession*

█ IND.CODE 35-48-4-11 creates an offense for the knowing and intentional possession of marijuana, and when the amount possessed by the defendant is in excess of 30 grams, the offense is a Class D felony. The court in *Watt v. State*, (1980) Ind.App., 412 N.E.2d 90, reviewed the rules on possession as follows:

"In order to establish possession of a controlled substance, proof of actual possession is not required. *Johnson v. State* (1978) [176] Ind.App. [567], 376 N.E.2d 542; *Phillips v. State*, (1974) 160 Ind.App. [647], 313 N.E.2d 101. Nor must the possession be exclusive. *Ludlow v. State*, (1973) Ind.App., 302 N.E.2d 838, 843 rev'd on other grds, 262 Ind. 266, 314 N.E.2d 750. Non-exclusive constructive possession is sufficient. See *Martin v. State* (1978) [175] Ind.App. [503], 372 N.E.2d 1194.

Our Supreme Court has defined constructive possession as 'an intent and capability to maintain control and dominion' over the contraband. *Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557, 558. *Accord, Edwards v. State* (1979) [179] Ind.App. [363], 385 N.E.2d 496; *Hutcherson v. State* (1978) [178] Ind.App. [8], 381 N.E.2d 877; *Mills v. State* (1978) [177] Ind.App. [432], 379 N.E.2d 1023.

Proof of a possessory interest in the premises in which a controlled substance is found is adequate to show the capability to maintain control and dominion over the substance. *Hutcherson, supra; Mills, supra; Corrao v. State* (1972) 154 Ind.App. 525, 290 N.E.2d 484. However, when a person does not have exclusive possession of the premises, 'mere pres-

ence' in the place is not sufficient proof of intent to possess the substance. See *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412. The element of intent is proved by evidence of the accused's knowledge of the nature of the substance and its presence. *Thomas, supra; Hutcherson, supra.* Although such intent may be inferred when possession of the premises is exclusive, the inference must be supported by additional circumstances if possession of the premises is not exclusive. *Martin, supra; Hutcherson, supra.*"

412 N.E.2d at 98.

Judge Shields, in her dissent in *Parson v. State*, (1982) Ind.App., 431 N.E.2d 870, added:

"Additional factors present in nonexclusive possession situations which have been held sufficient to link the accused with the substance in question include: *Thomas*, (defendant seated near table where narcotics were found in open view); *Ledcke v. State*, (1973) 260 Ind. 382, 296 N.E.2d 412 (drugs in manufacturing setting and defendant's attempted flight); *Griffin v. State*, (1972) 259 Ind. 205, 285 N.E.2d 644 (defendant admitted owning narcotics); *Watt*, (close proximity of defendant's clothing to contraband); *Hutcherson v. State*, (1978) Ind.App., 381 N.E.2d 877, reh. den. (1978) 382 N.E.2d 983 (defendants attempted flight); *Mills v. State*, (1978) Ind.App., 379 N.E.2d 1023 (incriminating paraphernalia linked to defendant); *Moss v. State*, (1975) 165 Ind.App. 502, 333 N.E.2d 141, 335 N.E.2d 633 (furtive gestures)."

431 N.E.2d at 874.

The evidence most favorable to the state revealed that Snyder was the sole occupant of the apartment and possessed the only key. A store environment existed complete with pre-packaged retail baggies, scales, a large amount of contraband, cash, and extra baggies. From this place Snyder sold marijuana. Snyder's argument under this issue is specious.

*Issue II: Probable cause*

Snyder's argument proceeds thusly. He does not challenge the initial formal adequacy of the probable cause testimony or affidavits, but argues that since the affidavits and testimony were recanted by the two witnesses, Hood and Johns, probable cause did not exist to support the issuance of the search warrant. Therefore, the trial court erred in not suppressing the evidence obtained thereby. Neither Snyder nor the State has presented any authority directly on point, and our research has disclosed none.

The Supreme Court of the United States recently, in *Illinois v. Gates,* (1983) — U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527, discussed probable cause:

"In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Id.* [*Brinegar v. United States,* 338 U.S. 160], at 175, 69 S.Ct. [1302] at 1310 [93 L.Ed. 1879]. Our observation in *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding 'particularized suspicion,' is also applicable to the probable cause standard:

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. As these comments illustrate, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), 'Informants' tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability.' Rigid legal rules are ill-suited to an area of such diversity. 'One simple rule will not cover every situation.' *Ibid.*

\* \* \* \* \* \*

"... 'probable cause' ... means less than evidence which would justify condemnation... It imports a seizure made under circumstances which warrant suspicion ... 'only the probability', and not a prima facie showing, of criminal activity is the standard of probable cause." (Footnotes omitted.)

103 S.Ct. at 2328–30.

*See Watt, supra; Layman v. State,* (1980) Ind.App., 407 N.E.2d 259. Inferences may be drawn by the magistrate from the facts stated. *McClain v. State,* (1980) Ind., 410 N.E.2d 1297. Probable cause must be established before the search, and not as a result of the fruits. *Ferry v. State,* (1970) 255 Ind. 27, 262 N.E.2d 523. *Illinois v. Gates, supra,* signaled a retreat from the hyper-technical approach used by courts to invalidate search warrants. It abandoned the two prong test of "veracity" and "basis of knowledge", and created the "totality of circumstances" test:

"For all these reasons, we conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli.* In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. *See Jones v. United States* [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697], *supra; United States v. Ventresca* [380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684], *supra; Brinegar v. United States, supra.* The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowl-

edge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. *Jones v. United States, supra,* 362 U.S., at 271, 80 S.Ct., at 736. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.*" (Footnotes omitted.)

103 S.Ct. at 2332.

■ The original determination of probable cause, however, is not immutable, and as a general proposition a false affidavit will render a search warrant invalid, and the evidence obtained thereby inadmissible. *Gunter v. State,* (1971) 257 Ind. 524, 275 N.E.2d 810; *Watt, supra;* and *Moore v. State,* (1974) 159 Ind.App. 381, 307 N.E.2d 92. A defendant may attack the probable cause determination as contrary false statements made knowingly, intentionally or with reckless disregard for the truth. *Franks v. Delaware,* (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667; and *Watt, supra.* It is stated in *Watt, supra:*

> "Nonetheless, once the State has obtained a magistrate's determination of probable cause, a presumption of validity obtains. *Franks, supra.* See generally, 2 J. Varon, *Searches, Seizures and Immunities* 876 (1974). It is therefore incumbent upon the defendant to make some showing that the facts stated were untrue or tainted by illegality, if the reasonable inferences to be derived from the common-sense reading of the affidavit are that no such falsehood or illegality exists. Reviewing courts, including the trial court on a motion to suppress, must pay substantial deference to the magistrate's determination of probable cause. *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Riddle [v. State* (1971) 257 Ind. 501, 275 N.E.2d

788], *supra.* Thus, it is entirely proper to require of one challenging the legality of a search, in order to suppress evidence, that he establish an invasion of his rights. *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 731, 4 L.Ed.2d 697.''

412 N.E.2d at 95.

However, the *Illinois v. Gates* court cautioned:

> "Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli, supra,* 393 U.S. [410], at 419, 89 S.Ct. [584], at 590 [21 L.Ed.2d 637]. 'A grudging or negative attitude by reviewing courts toward warrants,' *Ventresca, supra,* 380 U.S., at 108, 85 S.Ct., at 745 is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant 'courts should not invalidate ... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' *Id.,* at 109, 85 S.Ct., at 746.''

103 S.Ct. at 2331.

*Powers v. State,* (1982) Ind., 440 N.E.2d 1096, addressed the problem of whether illegal telephone intercepts by an informant vitiated a warrant:

> " 'As this Court stated in *Smith v. State,* (1971) 256 Ind. 603, 271 N.E.2d 133, 136:
>
> > "The test for probable cause to make an arrest is whether *at the time of the arrest* the facts and circumstances ... were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense. *Beck v. Ohio,* (1964) 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.''
>
> Emphasis added. *See Gaddis v. State,* (1977) 267 Ind. 100, 368 N.E.2d 244. Thus, whether probable cause existed for the arrest is determined by examining the facts and circumstances as

they were known to be at the time of the arrest.'

*Riggenbach v. State*, (1979) [272] Ind. [322], 397 N.E.2d 953, 954–55.

Although the above cited case dealt with probable cause for arrest, we feel the rationale is similar for probable cause in issuing a search warrant. The facts known to Officer Croft *at the time the search warrant was issued* indicated that illegal activity was taking place in Appellant's house. That some of the underlying circumstances may be shown later after trial to be illegally obtained does not change the fact that probable cause existed for the search and subsequent arrest. No error has been shown." (Our emphasis.)

440 N.E.2d at 1103.

In *Riggenbach v. State*, (1979) 272 Ind. 322, 397 N.E.2d 953, cited in *Powers*, a probable cause affidavit was filed by a police officer for the arrest of a defendant charged with murder based solely upon information received from one Miller. Miller, subsequently changed his account and admitted that he, not the defendant, did the shooting, but at the defendant's request. The court, in denying defendant's contention that because of the false statement there was no probable cause to support the affidavit based upon that information, stated:

"That some of the underlying facts may be shown at a later date to be untrue does not change the fact that probable cause did exist for the arrest. Appellant does not argue that probable cause did not exist based upon Jerry Miller's original version of the incident. Therefore, we find no error as to this issue."

397 N.E.2d at 954–5.

Language in *Illinois v. Gates, supra; Powers, supra;* and *Riggenbach, supra,* suggests that probable cause in search warrant cases is determined by looking at the facts from the point of view of the magistrate who made the judgment and the facts known and presented at that time. If, from that point of view, probable cause exists, then the Fourth Amendment guar-

antees are satisfied. Later information casting doubt on facts shown at the probable cause hearing will not, absent state participation in false evidence, invalidate a search warrant.

However, we need not make that determination. Language exists in cases which permits the trial judge as the trier of fact to assess the later questioning information and determine its validity. In *Powers, supra,* the court stated:

"It may be possible that the information concerning the eight occasions when the informant knew where Appellant was going and who he was meeting was obtained by listening in on telephone calls but this speculation was apparently *insufficient to convince the trial court* of any illegality. Officer Croft stated that he did not know of any illegal interceptions nor did he authorize any interceptions.

\* \* \* ⁛ \* \*

If Hartman had testified at the suppression hearing and at that point *convinced* the trial court of her allegations [phone intercepts] the search warrant would have been invalid due to the illegal information contained therein." (Emphasis added.)

440 N.E.2d at 1101–2.

In *Phelan v. State*, (1980) Ind., 406 N.E.2d 237, where the charge was made that the search warrant was issued upon an affidavit containing a knowingly false statement, the court said:

"In order for the Defendant to prevail on such an issue, he must first show that a relevant matter, as enumerated in the affidavit, was untrue... In this case we are not *convinced* that the matter challenged was, in fact, untrue." (Emphasis added and citations omitted.)

406 N.E.2d at 240.

In *Potter v. State*, (1979) 179 Ind.App. 349, 385 N.E.2d 955, the court stated:

"*Potter* has not *persuaded* us that such misstatements as he complains of were

known to be false by the affiant..."
(Emphasis added.)

385 N.E.2d 959.

Finally, in the review of a suppression hearing, we will not weigh the evidence, nor adjudge the credibility of witnesses. *Stinchfield v. State,* (1977) 174 Ind.App. 423, 367 N.E.2d 1150.

 We are of the opinion that the above authorities make the question of probable cause and the attack upon the truth of the statements comprising probable cause, a question of fact to be determined by the trial court. A presumption of validity of the search warrant exists, and the burden is upon the defendant to overturn that presumption. As the trier of fact, the trial court is not compelled to believe the turncoat witness or affiant at a later suppression hearing that he lied at the previous probable cause hearing. If the court does not so believe, the presumption remains. We must pay substantial deference to the magistrate who originally determined that probable cause existed, who, in this instance, was the same judge who heard and denied the motion to suppress. We do not weigh the evidence nor determine the credibility of witnesses.

 In this case, Hood and Johns each signed affidavits and gave sworn testimony before the court at a hearing conducted on June 17, 1981, that on June 12, 1981, they visited Snyder, saw a garbage bag in Snyder's apartment containing a large amount of marijuana, bought some, smoked it, and confirmed that it was marijuana. Johns added that he saw a gun and a stack of $20 bills an inch high. Both stated that they had previously purchased marijuana from Snyder at that location on numerous times. At the suppression hearing, through Hood's direct testimony and Johns' deposition, both recanted that testimony and said it was not true. They admitted signing the affidavits, knew the content, and admitted giving the testimony. Johns was then asked the following question in his deposition, to which he answered:

(Q) "Why were you telling this if it isn't true?"

(A) "Well, the way it started out they were going to drop the burglary charges on us, me and Pete, and it did not end up that way."

The trial court was entitled to believe that the original probable cause testimony was true, and that the witness, dissatisfied with prosecutorial treatment on the burglary charge, retaliated and lied at the suppression hearing. As stated in *Illinois v. Gates, supra,* we are dealing only in a probability of criminal activity when issuing a search warrant.[1]

 A significant parallel exists in other areas of the law. For example, after a conviction, the key and only witness connecting the defendant to the crime, recants and says that he lied at trial. Such testimony does not in and of itself, entitle a defendant to a new trial for that decision is addressed to the sound discretion of the trial court who saw and heard the witness. *Best v. State,* (1981) Ind.App., 418 N.E.2d 316 *trans. denied; Tilton v. State,* (1981) Ind.App., 416 N.E.2d 870; and *Sanders v. State,* (1977) 175 Ind.App. 209, 370 N.E.2d 966. *Accord Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482. In these kinds of cases the former testimony later recanted will even sustain the conviction beyond a reasonable doubt where the standard is

---

**1.** The United States Supreme Court in *Franks v. Delaware,* (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, did not hold that a defendant may challenge the affidavit supporting a search warrant, but that he must show a deliberate falsehood or reckless disregard for the truth by the affiant himself, not of any nongovernmental informant. *U.S. v. Wuagneux,* (11th Cir.1982) 683 F.2d 1343; *U.S. v. Schauble,* (10th Cir.1981) 647 F.2d 113; *U.S. v. Luschen,* (8th Cir.1980) 614 F.2d 1164; *U.S. v. Sultan,* (2nd Cir.1972) 463 F.2d 1066; and *U.S. v. Phillips,* (M.D.La. 1983) 563 F.Supp. 267. It is not enough to show that the informant deliberately lied to an unsuspecting affiant. *Schauble, supra.* In light of these case holdings and the facts in the present case, we would conclude that where a truthful police officer bases his application for a search warrant on the sworn statement of an informant who supports it with sufficient underlying facts, the warrant should stand.

beyond a reasonable doubt. Here, the only standard is a probability. The trial judge simply was not compelled to believe Hood and Johns.

For the above reasons this cause is affirmed.

Judgment affirmed.

BUCHANAN, C.J., concurs.

SHIELDS, J., concurs in result.