## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2015, 10:23 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jack Quirk
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kenneth E. Biggins
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph D. Haskins, III,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 10, 2015

Court of Appeals Case No.
18A02-1408-CR-555

Appeal from the Delaware Circuit Court
The Honorable Kimberly S. Dowling, Judge
Case No. 18C02-1308-FB-13

**Crone, Judge.**

## Case Summary

[1]     Joseph D. Haskins, III, appeals his conviction for class C felony carrying a handgun without a license, arguing that the evidence is insufficient to establish

that he had actual or constructive possession of the gun. Concluding that the evidence is sufficient, we affirm.

## Facts and Procedural History

The evidence most favorable to the conviction shows that in July 2013, Muncie Police Department Officer Amoreena Kesler reported to the Earthstone Terrace apartments in the early morning hours to assist another officer in searching for shoplifting suspects. Officer Kesler was in a police car and in uniform. While Officer Kesler was speaking to the other officer, she saw two African-American men drive into the complex on two mopeds. Knowing that the shoplifting suspects had been seen on a moped, Officer Kesler drove after them but lost sight of them.

Officer Kesler parked her police car and began walking to the rear of the apartment complex when "a black male, wearing a white t-shirt and brown shorts came running … towards the front of the apartment." Tr. at 48. Officer Kesler was still next to her police car. The man, who was later identified as Haskins, was running directly toward her. She ordered the man to stop and announced that she was a police officer. The man looked at her, turned around, and ran to the back of the apartment building. She ran after him yelling, "[P]olice, stop running." *Id.* at 49. She followed him behind the apartment building, and she saw another black man running. She ordered him to stop, but he did not. She saw Haskins and the other man run into a cornfield behind the apartment building. Each ran into a separate area of the cornfield.

[4]     More police arrived. Eventually, Haskins exited the cornfield from the same area that he had entered it. Several minutes later, the other man, later identified as Tristin Twilley, also exited the cornfield where he had entered it.

[5]     While Officer Kesler was behind the apartment building, she observed that the apartments had patios. The police found two mopeds parked on the patio of Haskins's sister's apartment. Their engines were warm, and they smelled like gasoline. The keys to the blue moped were found in Twilley's pocket. The keys to the red moped were in the ignition, attached to an Ivy Tech lanyard. Unlike Twilley, Haskins had previously attended Ivy Tech. Officer Kesler saw a cellphone with a purple case in the red moped's console and what she believed to be the handle of a handgun wrapped in a red bandana extending out of the console. Officer Kesler removed the object to determine if it was actually a gun. When she confirmed that it was, she returned it to its original location. She photographed the moped and the gun. Haskins informed the police that the cellphone was his, but he said that he had lost it and that it was being returned to him that night for a fee of twenty dollars. Haskins also told police that he had played basketball with Twilley earlier that evening.

[6]     The State charged Haskins with class C felony carrying a handgun without a license and class D felony receiving stolen property. Following a bench trial, the trial court found Haskins guilty of class C felony carrying a handgun without a license and not guilty of the second charge. Haskins appeals.

# Discussion and Decision

Haskins challenges the sufficiency of the evidence. In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences arising therefrom supporting the conviction without reweighing the evidence or judging witness credibility. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008). "We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id.* "Elements of offenses and identity may be established entirely by circumstantial evidence and logical inferences drawn therefrom." *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990).

To convict Haskins of carrying a handgun without a license, the State had to prove beyond a reasonable doubt that he carried a handgun in any vehicle or on or about his body without being licensed and that he had been convicted of a felony within the prior fifteen years. Appellant's App. at 48-49; Ind. Code §§ 35-47-2-1, -23. "To satisfy these elements, the State must prove the defendant had either actual or constructive possession of the handgun." *Deshazier v. State*, 877 N.E.2d 200, 204 (Ind. Ct. App. 2007), *trans. denied* (2008).

Haskins contends that the evidence is insufficient to establish that he had actual or constructive possession of the handgun.

> To show actual possession, the State must show that the defendant had direct physical control over the handgun. When proceeding on a theory of constructive possession, the State must show that the defendant had both the intent and capability to maintain dominion

and control over the handgun. Such a showing inherently involves showing the defendant had knowledge of the handgun's presence.

*Id.* at 205 (citations, quotation marks, and brackets omitted).

[10] Evidence of a defendant's dominion and control over a firearm may include the following: "(1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; and (5) the mingling of a firearm with other items owned by the defendant." *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004). Haskins claims that the only evidence connecting him to the mopeds was his cell phone and that the State offered no evidence that he knew that the handgun was present. We disagree.

[11] Haskins admitted that he was with Twilley earlier in the evening. They were both found hiding in the same cornfield. The mopeds were parked next to each other on Haskins's sister's patio. The mopeds were still warm, indicating that they had recently been ridden. Twilley had the key to the blue moped in his pocket. The key to the red moped was attached to an Ivy Tech lanyard, and Haskins had previously attended Ivy Tech. From this evidence and the reasonable inferences arising therefrom, a reasonable factfinder could find beyond a reasonable doubt that Haskins had just been driving the red moped. As for whether Haskins knew that the handgun was present, it was in plain view in the red moped's console directly in front of the seat. Haskins's cellphone was next to it. Also, Haskins ran away from Officer Kesler when he saw her. "Flight is also an 'additional circumstance' that will support an

inference of intent [to maintain dominion and control].” *Lampkins v. State*, 682 N.E.2d 1268, 1276 (Ind. 1997) (quoting *Hutcherson v. State*, 178 Ind. App. 8, 11-12, 381 N.E.2d 877, 879 (1978)). All this evidence is sufficient to establish that Haskins knew that the handgun was in the moped and that he had dominion and control over it. Accordingly, we affirm his conviction.

[12] Affirmed.

Friedlander, J., and Kirsch, J., concur.