RONALD ANDREW CORRAO, MICHAEL D. GOULET, SHERI A. DAUFEN AND MARY E. MANNION *v.* STATE OF INDIANA.

[No. 3-672A17. Filed December 18, 1972.]

---

*Rex L. Reed, Rasor, Harris, Garrard & Lemon,* of Warsaw, for appellants.

*Theodore L. Sendak,* Attorney General, *John McArdle,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—This appeal is from the conviction of four defendants of the crime of unlawful possession of marijuana.

The defendants-appellants, Ronald Andrew Corrao, Michael D. Goulet, Sheri A. Daufen and Mary E. Mannion, were charged by affidavit in two counts. The defendants were tried to the court without the intervention of a jury, and were found guilty of the crime of unlawful possession of a dangerous drug, namely, cannabis, more commonly known as marijuana, as charged in County II of the affidavit. Corrao and Goulet were each fined in the penal sum of $500 and sentenced to be imprisoned in the Indiana State Prison for an indeterminant period of not less than one year, nor more than ten years. Such sentences were suspended and Corrao and Goulet were placed on probation for a period of two years. Daufen and Mannion were each fined in the penal sum of $500 and sentenced to be imprisoned in the Indiana Women's Prison for not less than one year nor more than ten years. Such sentences were suspended and Daufen and Mannion were placed on probation for a period of two years. The timely motion to correct errors filed by the defendants was overruled and this appeal followed.

Prior to trial, defendants-appellants filed a motion to suppress evidence on the ground that the seizure of the bags from the trunk of the automobile was the fruit of an unconstitutional search. The overruling of such motion by the trial court is the first error assigned and argued by defendants-appellants in this appeal.

The trial court conducted a hearing on the motion to suppress wherein the following evidence was adduced:

Deputy Sheriff Richard Mikel was proceeding to his home from the Sheriff's Department at approximately 3:30 A.M., on August 3, 1971. On his citizens' band radio he received a call from Gordon Teeple that there was a car with a Wisconsin plate "messing around" in the marijuana area. Mikel proceeded to the location given by Teeple. Mikel testified that marijuana was growing in abundance in that particular area of the county.

Officer Mikel located the car and followed it for approximately four miles. He went around the Wisconsin car and stopped it, purportedly for failing to dim the headlights. Mikel approached the car and asked the driver, identified as Corrao, to see his driver's license. Corrao had none.

Corrao had turned the window of the car down to talk to Mikel. Mikel was within a foot and a half of the windows when he smelled marijuana coming from the car. Mikel subsequently asked Corrao, the driver, if he "could go through the car." Corrao gave his permission, however, Mary Mannion, who identified herself as the owner of the vehicle, violently protested. Deputy Mikel then searched the car and found three plastic bags and one mailbag of marijuana in the trunk.

A warrantless search of a vehicle is not unconstitutional provided the seizing officer has reasonable and probable cause to believe that the contents of the vehicle offend against the law. *Carroll* v. *United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *Chambers* v. *Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Preston* v. *United States* (1964), 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 2034, 29 L.E.2d 564; *Paxton* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636.

In the instant case, on August 3, 1971, at approximately 3:30 A.M., Deputy Mikel was directed to a white, 1964 Ford with Wisconsin license plates which was reported to be "messing around" in an area where marijuana was known to grow in abundance. Officer Mikel stopped a car matching the description he had been given, and during the course of his investigation smelled the odor of freshly cut marijuana coming "out of the car." Under the authorities hereinabove cited, probable cause existed for Deputy Mikel to search the vehicle.

Notwithstanding the above conclusion, our decision on

this issue must be against the appellants for another, entirely separate, reason. The record before us indicates that at the trial no objections were made that the evidence was the fruit of an illegal search and seizure. State's Exhibit No. 1 consisted of a clear plastic bag purportedly containing a portion of the marijuana taken from the trunk of the vehicle in which the defendants were passengers. The only recorded objection to the admission into evidence of State's Exhibit No. 1 was that the contents of the bag had "no surface trustworthiness."

In *Harrison* v. *State* (1972), 258 Ind. 359, 281 N.E.2d 98, at 99, it is stated:

> "We do not pass on the question as to whether or not the motion to suppress was properly overruled for even if we assume for the sake of argument that the motion to suppress was erroneously overruled, that question was waived by appellant when counsel for the appellant expressly stated that he had no objection to the admission of the questioned objects into evidence. * * * An Indiana Appellate Court decision dealing with this precise question stated that if on trial a defendant does not object to evidence obtained by an illegal search warrant he cannot complain of the action of the trial court in overruling his motion to suppress. Worrell v. State (1930), 91 Ind. App. 259, 171 N.E. 208. Other jurisdictions have taken this same approach. See 50 A.L.R. 2d 531, 591."

The failure of the defendants to properly object at trial waived the error alleged in the overruling of their motion to suppress. *Chandler* v. *State* (1929), 89 Ind. App. 304, 166 N.E. 289; *Harrison* v. *State, supra.*

Appellants next contend that "the conviction of appellants should be overturned and that any evidence obtained from appellants should have been suppressed because of the State's failure to properly advise appellants at the time they were deprived of their freedom of action that they had specific rights secured under the holding in *Miranda* v. *State of Arizona, supra,* [(1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694.]"

The evidence is uncontroverted that appellants were not given the "Miranda warnings" at the time of arrest, but were taken to the jail where they were booked and then advised of their rights. Except for the preliminary investigation at the scene, the record before us does not indicate that appellants were asked any questions between the time they were taken into custody and the time they were booked. When they were booked, appellants were advised of their rights and were asked if they would care to talk. Officer Minear testified that appellants refused to sign "the waivers" and "said they would rather have a lawyer."

In *Miranda*, at 478-479 of 384 U.S., at 1630 of 86 S.Ct., at 726 of 16 L.Ed.2d, it is stated:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." (Footnote omitted.)

The above language is clear that "[t]he requirements of warning and waiver imposed by *Miranda* v. *Arizona* (1966),

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, apply only to custodial interrogation." *New* v. *State* (1970), 254 Ind. 307, at 314, 259 N.E.2d 696, at 700.

In the instant case, had appellants been interrogated prior to the time they were advised of their rights, no statement made by them during that time could have been used against them. *Miranda* v. *State of Arizona, supra.* However, even though the "procedural safeguards" required by Miranda were not observed when appellants were taken into custody, the record before us shows that no questions were asked by the police. Appellants do not even contend that any statements obtained from them were admitted into evidence. No reversible error was committed with regard to this issue.

The crux of the final assignment of error argued by appellants is that the State failed to prove that they had possession of the marijuana.

A conviction for possession of a dangerous drug may rest upon either actual or constructive possession. *Rose* v. *State* (1972), 258 Ind. 377, 281 N.E.2d 486, 488. Actual possession means exactly what it implies, *i.e.,* actual physical control. *Williams* v. *State* (1969), 253 Ind. 316, 321, 253 N.E.2d 242. Constructive possession may be proven by circumstantial evidence from which care, management and control over the item in question may be inferred. *Rose* v. *State, supra.* The accused must also have actual knowledge of the presence of the item. *Malich* v. *State* (1930), 201 Ind. 587, 588, 169 N.E. 531.

In the instant case the marijuana was found in the trunk of the automobile. There was no evidence of actual physical possession. The question thus becomes whether the appellants were in constructive possession of the marijuana.

Pertinent to this question is the following language from

*Petty* v. *People* (1968), 167 Colo. 240, 447 P. 2d 217, as quoted in *Feltes* v. *People* (Colo. 1972), 498 P. 2d 1128, at 1131:

" '. . . a conviction for possession may be predicated upon circumstantial evidence. * * * A conviction of illegal possession may be based upon evidence that the marijuana, while not found on the person of the defendant, was in a place under his dominion and control. * * * If possession is established, knowledge of the character of the drug and the fact that it is possessed can be inferred therefrom. * * * Possession need not be exclusive and the substance can be possessed jointly by a person and another without a showing that the person had actual physical control thereof. * * * However, where a person is in possession, but not in exclusive possession of the premises, it may not be inferred that he knew of the presence of marijuana there and had control of it unless there are statements or other circumstances tending to buttress the inference. * * * Similarly joint possession cannot be established by the fact that the defendant is or has been in the company of one having possession of the substance in the absence of an additional factor linking the defendant with it.' " (Authorities omitted.)

In the instant case four defendants were convicted of the possession of marijuana. The marijuana was contained in the trunk of the automobile in which all four defendants were passengers. The circumstances surrounding the arrest exude the inference that the defendants were attempting a "midnight requisition of roadside marijuana." There is no evidence, however, linking any of the defendants with the procuring of the marijuana. If the conviction of each of the four defendants is to be sustained it must be supported by evidence showing knowledge of the marijuana and control over the premises in which it was found, namely, the automobile. There is evidence from which knowledge of the presence of the marijuana may be inferred, *i.e.*, the testimony of Deputy Mikel as to the smell coming out of the car. There is evidence from which control over the automobile by two of the defendants may be inferred, *i.e.*,

Corrao was the driver and Mannion was the owner of the car. There is no evidence that Daufen and Goulet had control over the marijuana. Constructive possession of the items in the trunk may be imputed to Mannion and Corrao, but may not be imputed to Daufen and Goulet for they were merely passengers. The following cases support our holding: *People* v. *Mosley* (1971), 131 Ill. App. 2d 722, 265 N.E.2d 889; *Parks* v. *State* (1972), 46 Ala. App. 722, 248 So. 2d 761.

The judgment of the trial court convicting Mannion and Corrao is affirmed; the judgment of the trial court convicting Daufen and Goulet is reversed with instructions for further proceedings consistent with this opinion.

Judgment affirmed in part; and reversed in part.

Sharp, J., concurs; Staton, J., concurs in result with opinion.

## CONCURRING OPINION

STATON, J.—When the marijuana was offered into evidence, the defendants' failure to object waived any error on appeal. The pretext offered by Deputy Sheriff Richard Mikel that the defendants' automobile failed to dim its lights is a sham. It is not probable cause for stopping and searching the trunk of the automobile.[1]

NOTE.—Reported at 290 N.E.2d 484.

---

1. The owner of the car objected to the search. The officer testified that this area was known as the "marijuana area" where the plant is growing in abundance. It is not surprising that some odor of the plant was perceptible.