Vincent **WILLIAMS**, Appellant
(Defendant Below),

v.

**STATE of Indiana**, Appellee
(Plaintiff Below).

No. 49A04–9411–CR–448.

Court of Appeals of Indiana.

Nov. 16, 1995.

Rehearing Denied Jan. 18, 1996.

Mark A. Earnest, Indianapolis, for Appellant.

Pamela Carter, Attorney General and Meredith J. Mann, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Vincent Williams belatedly appeals his 1991 convictions for dealing in cocaine, conspiracy to commit dealing in cocaine, and possession of cocaine. We affirm.

### ISSUES

1. Whether Williams was denied effective assistance of counsel.

2. Whether sufficient evidence of Williams' constructive possession of the cocaine was presented to sustain the conviction.

3. Whether either of two jury instructions constitutes reversible error.

4. Whether impermissible hearsay was admitted.

**1.** There was no telephone in Son's trailer.

### FACTS

The facts most favorable to the judgment of conviction indicate that in the early morning hours of November 14, 1989, at the behest of the Indianapolis Police Department narcotics division, informant David P. Bogigian ("Son") contacted Vincent Williams by pager to arrange a controlled cocaine buy. Son called Williams' pager twice from a telephone at the narcotics division office and entered the code number assigned to Son by Williams; Williams twice returned the call to Son at that telephone. Son sought an ounce of cocaine, and Williams agreed to provide it to Son and his father, David J. Bogigian ("Father"). Williams would have the cocaine for them when they arrived at Son's trailer. A third call was placed by Son to Williams' pager at about 2:00 a.m. Williams returned the call, and Son told Williams they were on their way.

Several narcotics division officers were conducting surveillance of the area of Son's trailer. They saw Williams and his vehicle at Son's trailer before the arrival of Son and Father. They saw Williams go to his vehicle and make a call on his car phone at about 2:00 a.m.[1] After Son and Father arrived at the trailer, Williams entered Son's trailer with them. After a short while inside, Williams came out of the trailer, walking in front of Son and away from his parked vehicle. When Williams bent over and reached toward the ground, Detective Poikey identified himself and directed Williams to lie on the ground. The only object within Williams' reach was a Dairy Queen french fry packet which contained one ounce of cocaine. The money given to Son to make the buy was in Williams' pocket.

Williams was tried by jury for dealing in cocaine, possession of cocaine, and conspiracy to commit dealing in cocaine. He was found guilty on all three counts.

### DECISION

1. *Ineffective Assistance of Counsel*

■ Williams poses a tripartite claim of ineffective representation by trial counsel. We subject claims of ineffective assistance to

a two-part test. Reversal for ineffective assistance of counsel is appropriate when a defendant demonstrates both that a counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). Our supreme court has observed that:

> [a] claim of ineffective assistance must identify the claimed errors of counsel so that the court may determine whether, in light of all circumstances, counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. If deficient performance of counsel can be proven, defendant must further show a reasonable probability that it altered the outcome of the case.

*Id.* at 123.

### A. *Stereotype Testimony Describing Drug Dealers*

Williams first argues that trial counsel "sat idly by" while the State used "stereotyping testimony" and

> typecast [him] into the role of drug dealer, by continually asking questions of the State's narcotic detective witnesses about what a typical drug deal or drug dealer would be like and then fashioning it directly to the facts in the instant case.

Williams' Brief at 18.

■ Williams' only authority in support of his request for reversal for ineffective counsel on this issue is *Sims v. State* (1992), Ind.App., 591 N.E.2d 1044, wherein counsel was found deficient for failure to object to a

father's testimony vouching for his victim son's testimony. In *Sims v. State* (1992), Ind., 601 N.E.2d 344, 345, our supreme court found the vouching testimony not to be reversible error. In his reply brief, Williams argues that the latter decision "did not entirely do away with the notion that the admission of unobjected-to bolstering testimony might constitute error" but rather is limited to the *Sims* facts. Williams' Reply Brief at 1. To support this argument, Williams cites *Stewart v. State* (1990), Ind., 555 N.E.2d 121 which was overturned because an expert, a psychologist, was allowed to provide bolstering testimony. The objectionable testimony was the statement of the psychologist that she believed the victim-witness' story. Williams seeks to make *Sims* and *Stewart* applicable by casting the bolstering testimony as being the "collective" testimony of the narcotics detectives. But, taking this argument to its conclusion, the "collective" testimony would also be that which was bolstered. Hence, the argument is circular. Both *Sims* and *Stewart* deal with bolstering in the context of one witness' testimony about the truthfulness of *a specific witness'* testimony and are inapposite as Williams seeks to apply them.

Further, our review of the record indicates that each of the five narcotics division detectives who testified was initially questioned as to the length of his experience with narcotics investigations. Each detailed his training. The experience of two officers was estimated at about 1,000 investigations each. After the first officer testified about Son's placing a call to Williams' pager, he was asked whether it was "unusual for people involved in narcotics dealing to have pagers" and "why they use those." (R. 260). This example sets the tenor of all the questioning which followed as to the use in the drug dealing business of a pager, caller codes, a car phone, and having drugs for delivery located other than on one's person. The first profile question, whether it was unusual for drug dealers to have pagers, *was* objected to by counsel. The trial court overruled the objection. Thus, as the State notes, the "decision to not object when the State elicited similar testimony from other witnesses was a tactical decision," and can be

seen as "a wise tactical decision" because "continued objections would merely have emphasized the testimony in the eyes of the jury." State's Brief at 7. We agree.

■ The admissibility of evidence is entrusted to the discretion of the trial court. We do not find trial counsel to be ineffective for failing to continue to object to the admissibility of certain testimony from each of the State's police witnesses where the trial judge had already properly overruled a similar objection to the same type question put to another witness earlier. "Counsel cannot be faulted for failing to make an objection which had no hope of success and which might have the adverse effect before the jury of emphasizing the [testimony]." *Garrett v. State* (1992), Ind., 602 N.E.2d 139, 141.

### B. *Testimony about Son's Death*

■ Williams next claims his counsel was ineffective for "eliciting prejudicial information" from Father when he "brought up the fact that his son was dead;" for failing to object to the State's question "Are you aware of how he died" to Father on redirect; and for failing to move to strike Father's answer: "He was shot in the back by ambush." Williams' Brief at 20. According to Williams, such testimony left the jury "with the inescapable impression" that Williams "may likely be responsible or somehow involved" in Son's death. *Id.*

On this issue Williams refers us to *Messer v. State* (1987), Ind.App., 509 N.E.2d 249, *trans. denied,* for reversal "based on a finding of deficient trial counsel performance where the trial counsel on cross examination of a witness elicited harmful testimony." Williams' Brief at 20. The testimony elicited, however, differs significantly. In *Messer,* defense counsel's questions led to clearly inadmissible testimony about the defendant's attempt to exercise his Fifth Amendment right to remain silent.

Because the test for ineffective counsel is two-part, we skip that part of the State's arguments portraying counsel's questioning

as an appropriate attempt to impeach Father's credibility and his subsequent actions as trial tactics. As Williams observes at the close of his argument, he was never charged in any way with causing Son's death. The court instructed the jury as to the charges against Williams, the elements of each charge, and how the State bore the burden to prove beyond a reasonable doubt every material allegation of the crimes charged in order to convict. A final instruction directed the jury to acquit "if you find the accused was guilty of misbehavior or of other crimes which are not charged or covered." (R. 77). Williams has failed to show the reasonable probability that the possible implication of his involvement in Son's death altered the determination of the jury as to whether he was guilty of the drug crimes charged.

### C. *Other Cocaine Evidence*

■ Finally, Williams claims his counsel was ineffective for his "failure to object throughout the trial when the State had its witnesses repeatedly identify and comment upon" the two ounces of cocaine seized from Son on November 13, 1989.[2] Williams' Brief at 21. As in the preceding issue, Williams claims the repeated exhibitions of and references to the two ounces of cocaine "burned in the minds of the jury" the "prejudicial effect" of "implied additional criminal activity on the part of the Defendant" about crimes for which he was not charged. Williams' Brief at 23.

As suggested by the State, we review the theory upon which trial counsel defended Williams. In his opening statement, counsel stated that Father and Son had been "busted" by the police for trying to sell drugs to an undercover officer, that Father and Son then were pressured, and that they "had everything to gain by implicating someone else." (R. 234, 237). Throughout the trial, counsel pressed the theory that Father and Son were the drug dealers in this case, not Williams. Counsel's closing statement repeated in detail the events of the apprehension of Father and Son on November 13th,

---

**2.** These two ounces were marked Part A of Exhibit 6 and never admitted. The one ounce and its Dairy Queen container were Part B, Exhibit 6.

when the two ounces were seized. Because the two ounces of cocaine were most firmly tied to Son and Father, but not to Williams, counsel was asking the jury to infer that the one ounce—which supported the charges against Williams—also should be tied to them. Thus, not objecting to this cocaine evidence can be seen as trial strategy for defense counsel.

## 2. *Sufficiency of Evidence*

██ Williams claims the evidence was insufficient to support a finding of his constructive possession of the cocaine. When reviewing the sufficiency of the evidence, we do not weigh evidence or judge the credibility of witnesses. *Marshall v. State* (1993), Ind., 621 N.E.2d 308, 320. We consider only the evidence most favorable to the verdict, with all reasonable inferences therefrom. *Id.* If there is substantial evidence of probative value to support the conviction, the verdict will be affirmed. *Id.*

Williams directs us to *Godar v. State* (1994), Ind.App., 643 N.E.2d 12, *trans. denied.* Godar challenged his conviction for possession of marijuana as lacking sufficient evidence of constructive possession. We noted that constructive possession requires a showing that "the defendant has the intent and capability to maintain dominion and control over the contraband." *Id.* at 14. We discussed joint possession, because Godar's automobile passenger had been charged with possession of the same marijuana found under the passenger seat, and said that "[a] substance can be possessed jointly by the defendant and another without any showing that the defendant had actual control thereof." *Id.* at 14. However, we found that "when possession is nonexclusive, it must be shown that the defendant had actual knowledge of the presence and illegal character of the substance." The analysis of *Godar*, relying upon that of *Corrao v. State* (1972), 154 Ind.App. 525, 290 N.E.2d 484, flows from an initial fact pattern of joint possession. Therefore, we do not find it directly applicable. Nevertheless, were we to apply it here, we would find *Godar*'s requirement of additional "circumstances to support an inference of an intent to control the contraband," *Godar* at 15, to have been shown in Williams' walking toward the cocaine container and reaching for it, after he had agreed to have the cocaine Son requested for him there when Son came to the trailer and having already pocketed the money for the drug buy.

Williams further refers us to *Moore v. State* (1993), Ind.App., 613 N.E.2d 849, 850, where Moore was found lying—"appear[ing] intoxicated and disoriented"—on a couch about four feet from drugs on a table in an apartment over which he exercised no control. Because the State "failed to prove that Moore had the capability to maintain control over the seized contraband," we found insufficient evidence of constructive possession. *Id.* at 853. Williams asserts that the State failed to prove he "had the capability to maintain control over the seized container." Williams' Brief at 25.

██ Williams' claim may best be considered under the guidance of *Matter of J.L.* (1992), Ind.App., 599 N.E.2d 208, as suggested by the State. There, we began from the premise of *Corrao, supra,* that to prove constructive possession of a drug the State must show both the defendant's intent and his capability to maintain control and dominion over the substance. Where the legal authority or practical ability to control premises is nonexclusive, the defendant's "capability to exercise control over the substance may be inferred but only *if there is some independent evidence from which the trier of fact may infer the defendant's intent to exercise such control.*" *Id.* (emphasis added) (citing *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486, 490). Evidence of "the capability to exercise control over the illegal substance" is "the ability to reduce the substance to his personal possession." *Id.* Thus, we review the facts for evidence of Williams' ability thereon. In mid-November, at some time after two o'clock in the morning, Williams emerged from Son's trailer and walked not toward but away from his parked vehicle. He walked ahead of Son to where he bent down "reaching for an item" on the ground. (R. 372). The only object nearby was the container of cocaine. Williams' knowledge of the outdoor location of the cocaine and his attempt to

retrieve it support an inference of his ability to exercise control over it.

The jury heard sufficient evidence to sustain its inference that Williams constructively possessed the cocaine.

### 3. *Instructional Error*

■ Williams presses two claims of trial court error in instructing the jury. Because Williams did not object to either of these instructions at trial, nor did he tender any instructions on the same subject matter, any error predicated on the giving of the instructions "is waived unless the giving of the instruction would rise to the level of fundamental error." *Faulisi v. State* (1992), Ind. App., 602 N.E.2d 1032, 1039. Our supreme court has stated that to be "fundamental error, the error must constitute a clearly blatant violation of basic and elementary principles, and the harm or potential harm therefrom must be substantial and apparent." *James v. State* (1993), Ind., 613 N.E.2d 15, 25.

Williams claims Final Instruction Number 22 is inadequate. The instruction reads as follows:

> Actual possession means exactly what it implies, i.e., actual physical control. Constructive possession may be proved by circumstantial evidence from which care, management and control over the item in question may be inferred. The accused must also have actual knowledge of the presence of the item.

(R. 86). Specifically, Williams argues the instruction "is inadequate because it fails to indicate that the State has the burden to prove constructive possession beyond a reasonable doubt." Williams' Brief at 27.

■ We have already noted the court's preliminary instruction informing the jury that the State bore the burden of proving "beyond a reasonable doubt every material allegation of the crimes charged." (R. 66). Another instruction indicated each element of the crime charged must be proven beyond a reasonable doubt. The court's final instructions specified the elements of the crimes of dealing in cocaine and possession of cocaine, both including the element of possession.

Moreover, the court advised the jury to consider "all instructions as they relate to each other." (R. 64).

Williams failed to provide any authority for the purported inadequacy of this instruction. We find the court's instructions adequately informed the jury that Williams' constructive possession of cocaine must have been proven beyond a reasonable doubt before it could return a conviction of guilty to the offenses charged.

■ Williams also challenges Instruction Number 24, which reads as follows:

> The possession of a large amount of cocaine is circumstantial evidence of intent to deliver. If you find from the facts presented that the defendant was in possession of an amount of cocaine that is greater than that needed for his own personal use, you may infer that the defendant possessed the cocaine with the intent to deliver it to other persons.

(R. 88). Williams refers us to *Chandler v. State* (1991), Ind., 581 N.E.2d 1233, 1236, wherein an instruction consisting only of the first sentence in the above instruction was found to be misleading and erroneous.

*Chandler*'s analysis of why the single sentence instruction was erroneous was threefold. First, it "implicitly posit[ed] that the evidence prove[d] beyond a reasonable doubt that appellant was in fact in possession of a large amount of narcotics." *Id.* Further, it was "not a suggestion as to what evidence of possession of a large amount of contraband narcotics may tend to prove but a categorical statement of what it d[id] prove." *Id.* And "the categorical form of the instruction [did] not invite the jury to consider the evidence of the possession by appellant of a large quantity of contraband as proof of intent to deliver, but command[ed] the jury to do so...." Hence, the instruction improperly invaded the province of the jury.

Accordingly, we apply this analysis to the Williams instruction. Although the categorical nature of the first sentence is troublesome, we believe the second sentence of the instruction mitigates the implicitly positing effect of the first. Further, the second sentence suggests what evidence of possession of

a large amount of cocaine may tend to prove, by telling the jury what it *may* infer *if* it makes a certain finding of fact. Finally, the two sentences of the instruction taken together do not command the jury to reach a particular result but rather invite them to consider certain evidence as proof of a required element.

Therefore, we find no clearly blatant violation of basic and elemental principles posing substantial and apparent harm. *James, supra.* The instruction given was not fundamentally erroneous.

### 4. *Hearsay*

Williams claims the trial court erred in admitting hearsay which, "coupled with" the "circumstances" of testimony about Son's death argued earlier in the ineffective assistance issue, had an "unrefutable prejudicial effect" of connecting Williams with the "uncharged 2 ounces of cocaine." Williams' Brief at 29.

■ Williams points to a narcotics detective being asked how he arrived at the amount of money to give Son to make the buy, but his reference to the record directs us to Father's testimony. Williams' other cites to the record on this issue are also erroneous, and no citations to authority are offered. His reply brief corrects the references to the record and cites *Hardin v. State* (1993), Ind., 611 N.E.2d 123—presumably to support his "argument," paraphrased above and consisting of two sentences—without explaining its application to the facts of this case. By his substantial contravention of Ind.Appellate Rule 8.3, Williams has waived review of this issue. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 89, *cert. denied* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349.

■ Waiver notwithstanding, Williams' argument must fail. At trial, the detective was asked, "And how did you arrive at that amount of money to give [Son]?" (R. 426). He responded, "That was the money owed on the previous 2 ounces that [Son] had bought from [Williams]—" (R. 427). At that point, Williams' counsel objected, and the court heard argument by both counsels (apparently in open court). The court over-ruled Williams' objection and stated to the jury that the matter was "entered not for the truth of the matter asserted, but for the reason for why he came up with $3760." (R. 429). Hearsay is an out-of-court statement offered to prove the truth of the facts asserted therein. *Miller v. State* (1991), Ind., 575 N.E.2d 272, 274. Thus, the court concluded that the detective's statement was not inadmissible because it was not hearsay. Given the inherent discretion of the trial court in the admission of evidence, we are not convinced the court was wrong. Further, the erroneous admission of hearsay evidence does not automatically constitute reversible error. *Id.* at 275. To warrant reversal, we must find Williams' substantial rights were affected by the evidence admitted. *Hardin, supra* at 131. We cannot agree with Williams that the detective's statement as to his calculation of the amount of money given Son to make the buy "substantially swayed" the jury's verdict. *Id.* at 132.

We affirm.

STATON, J., concurs.

RILEY, J., concurs in result.