**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRIS PALMER FRAZIER**
Marion County Public Defender
Agency, Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL SCHARNBERG**
**LARRY ALLEN**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOMINIQUE BURTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1401-CR-10 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Michael Jensen, Judge *Pro Tempore*
Cause No. 49G20-1208-FC-59015

**October 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On August 25, 2012, members of the Indiana State Police initiated a traffic stop after observing a vehicle, which was registered to Appellant-Defendant Dominique Burton, make a left turn without signaling. At the time of the stop, Burton was sitting in the front passenger seat of the vehicle. The troopers smelled the odor of alcoholic beverage emanating from the vehicle and observed that the occupants of the vehicle displayed excessive nervousness. The canine companion of one of the troopers also indicated the presence of narcotics. Following a search of the area indicated by the canine companion, the troopers recovered two bags of cocaine, having a street value of approximately $2200, and a set of digital scales from the vehicle's glove box.

Burton appeals following his conviction for Class C felony possession of cocaine. On appeal, Burton contends that the evidence is insufficient to sustain his conviction. Specifically, Burton claims that Appellee-Plaintiff the State of Indiana (the "State") failed to prove beyond a reasonable doubt that he constructively possessed the cocaine in question. For its part, the State contends that the evidence presented at trial is sufficient to sustain Burton's conviction. Concluding that the evidence is sufficient to sustain Burton's conviction, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

On August 25, 2012, Burton and Ernest Payne were traveling in a vehicle on the south side of Indianapolis. Payne was driving the vehicle, which was registered to Burton, and Burton was sitting in the front passenger seat. Sergeant Dean Wildauer of the Indiana State Police initiated a traffic stop and pulled the vehicle over after he observed the vehicle turn without signaling. Indiana State Trooper Adam Buchta stopped to assist Sergeant Wildauer.

As Sergeant Wildauer approached the vehicle, he observed that Burton "was looking straight ahead and [was] not wanting to make eye contact" with him. Tr. p. 21. This made Sergeant Wildauer "a little leery." Tr. p. 21. With respect to Payne, Sergeant Wildauer turned the investigation over to Trooper Buchta after he noticed the smell of alcoholic beverage coming from the vehicle.

As he began his investigation, Trooper Buchta observed that both Burton and Payne appeared to be "extremely nervous." Tr. p. 41. Specifically, they were "[s]tuttering with their words, talking real fast, shaking." Tr. p. 41. Trooper Buchta observed that Burton and Payne appeared to be more nervous than the average traffic violators and passengers that he comes into contact with. In light of the smell of alcoholic beverage coming from the vehicle, Trooper Buchta requested that Payne exit the vehicle and complete certain field sobriety tests.

---

[1] We held oral argument in the instant matter at Western High School on September 15, 2014. We wish to thank the Howard County Bar Association as well as the students and staff of Western High School for their hospitality.

While Trooper Buchta administered the field sobriety tests on Payne, Sergeant Wildauer moved to the rear of the vehicle. From that position, Sergeant Wildauer noticed that Burton "was making a lot of movements in the vehicle." Tr. p. 23. While Sergeant Wildauer could not see exactly what Burton was doing with his hands, he observed Burton adjust his body so that he could watch Trooper Buchta and Sergeant Wildauer in the vehicle's mirrors. Sergeant Wildauer also observed Burton's shoulders dip as if he were trying to hide something. Based on Sergeant Wildauer's training and experience, he believed that Burton was trying to be "sly" about his movements. Tr. p. 24.

Fearing that Burton might be trying to hide a weapon, Sergeant Wildauer asked Burton to exit the vehicle while Trooper Buchta completed his investigation of Payne. Once out of the vehicle, Burton began looking around, as if examining flight possibilities. Burton's actions outside of the vehicle made Sergeant Wildauer "even more nervous." Tr. p. 25.

Trooper Buchta's canine companion subsequently alerted Trooper Buchta of the possible presence of narcotics near the front passenger seat of the vehicle. Trooper Buchta and Sergeant Wildauer searched the area indicated by Trooper Buchta's canine companion and found two bags containing cocaine and a digital scale in the vehicle's glove box. Sergeant Wildauer deduced, in light of his training and experience, that the cocaine was likely for distribution, as its street value was approximately $2200. Burton and Payne were placed under arrest following the discovery of the cocaine.

4

On August 27, 2012, the State charged Burton with Class C felony possession of cocaine.[2] The trial court conducted a bench trial on October 22, 2013, following which, the trial court found Burton guilty as charged. On December 10, 2013, the trial court sentenced Burton to a four-year term, with twenty-eight days executed and the remainder suspended. Burton was also placed on probation for a term of two years. This appeal follows.

## DISCUSSION

Burton contends that the evidence is insufficient to sustain his conviction for Class C felony possession of cocaine. Specifically, Burton claims that the evidence is insufficient to prove that he constructively possessed the cocaine found in his vehicle.

### A. Standard of Review

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968

---

[2] Payne was also charged with possession of cocaine. This charge was resolved pursuant to a plea agreement.

5

N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

## B. Relevant Authority

Indiana Code section 35-48-4-6 provides that a person who "knowingly or intentionally possesses cocaine (pure or adulterated) … commits possession of cocaine … a Class D felony." However, the offense is a Class C felony if "the amount of the drug involved (pure or adulterated) weighs three (3) grams or more." Ind. Code § 35-48-4-6(b)(1)(A). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a).

"A conviction for possession of cocaine may rest upon either actual possession or constructive possession if the defendant does not have physical possession of the cocaine." *Matter of J.L.*, 599 N.E.2d 208, 212 (Ind. Ct. App. 1992) (citing *Frierson v. State*, 572 N.E.2d 536, 538 (Ind. Ct. App. 1991), *trans. denied*), *trans. denied*. "Actual possession occurs when a person has direct physical control over the items." *Bradshaw v. State*, 818 N.E.2d 59, 62 (Ind. Ct. App. 2004) (citing *Walker v. State*, 631 N.E.2d 1, 2 (Ind. Ct. App. 1994)). "Constructive possession is the actual knowledge of the presence and illegal character of the contraband and the intent and capability to maintain dominion and control over it." *Washington v. State*, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009), *trans. denied*.

6

Constructive possession may be proven by circumstantial evidence from which care, management, and control over the item in question may be inferred. *Corrao v. State*, 154 Ind. App. 525, 532, 290 N.E.2d 484, 487 (1972). "Possession need not be exclusive and the substance can be possessed jointly by a person and another without a showing that the person had actual physical control." *In re J.L.*, 599 N.E.2d at 212 (citing *Corrao*, 154 Ind. App. at 533, 290 N.E.2d at 487).

> In cases where the defendant has exclusive possession over the premises on which the contraband is found, an inference is permitted that the defendant knew of its presence and was capable of controlling it. [*Macklin v. State*, 701 N.E.2d 1247, 1251 (Ind. Ct. App. 1998)]. When possession [is] nonexclusive, however, additional circumstances must be present to support the inference that the defendant intended to maintain dominion and control over the contraband and that the defendant had actual knowledge of its presence and illegal character. *Id.* Such additional circumstances include, but are not limited to, the following: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999).

*Washington*, 902 N.E.2d at 288. While an individual's "mere presence where drugs are located … is not alone sufficient to support a finding of constructive possession," *see In re J.L.*, 599 N.E.2d at 212, the individual's close proximity to the drugs, coupled with furtive movements by the individual is sufficient to establish knowledge of and intent to control the drugs in question. *See Causey v. State*, 808 N.E.2d 139, 144 (Ind. Ct. App. 2004) (concluding that evidence demonstrating that defendant was in close proximity with the contraband coupled with furtive movements made by the defendant was sufficient to prove

7

constructive possession of the contraband); *Person v. State*, 661 N.E.2d 587, 590 (Ind. Ct. App. 1996) (same), *trans. denied*.

## C.  Analysis

Initially we note that Burton did not have exclusive possession over the premises in which the cocaine was found.  Burton and Payne were both present in the vehicle and could have potentially exercised control over the cocaine.  As such, the State was required to present evidence of additional circumstances to support the inference that Burton had knowledge of and intended to exercise control over the cocaine.

On appeal, Burton concedes that the evidence is sufficient to support the inference that he was capable of exercising control over the cocaine.  Burton claims, however, that the evidence is insufficient to support the inference that he had knowledge of or intended to exercise control over the cocaine.  The State, for its part, claims that the evidence supports the inference that Burton had knowledge of and intended to exercise control over the cocaine.

In claiming that the evidence is insufficient to sustain his conviction, Burton discusses each of the six factors listed in *Washington*.  With regard to these factors, Burton concedes that he was in close proximity to the cocaine, but he argues that he did not make any incriminating statements to Sergeant Wildauer, nothing in the record suggests that he was engaged in the manufacture of the drug, the cocaine was not found in Burton's plain view, and the evidence fails to prove that the cocaine was comingled with other items owned by him.  Burton also argues that the evidence fails to demonstrate that he attempted to flee from Sergeant Wildauer and that his movements in the vehicle could not be classified as furtive

8

movements.

With respect to the attempted flight factor, Burton argues that the evidence does not demonstrate that he attempted to flee. During trial, however, Sergeant Wildauer testified that after he had Burton step out of the vehicle, "[t]he whole time [Burton's] looking around" displaying signs of what Sergeant Wildauer's training and experience has led him to refer to as "pre-flight syndrome." Tr. p. 25. Sergeant Wildauer explained that an individual exhibiting signs of this so-called "pre-flight syndrome" would be "looking left, looking right, looking for an exit to get out of there." Tr. p. 25. Sergeant Wildauer's testimony is sufficient to establish that Burton took some step, *i.e.*, examining his surroundings, in an attempt to flee from Sergeant Wildauer and Trooper Buchta.

With respect to the furtive movement factor, Burton argues that movement inside the vehicle cannot be classified as "furtive" if "the officer does not know what he saw." Appellant's Br. p. 10. Specifically, Burton argues that his movements inside the vehicle cannot be classified as "furtive" because Sergeant Wildauer did not see him reach into the vehicle's glove box and could not see exactly what he was doing in the vehicle. Burton, however, provides no authority suggesting that a suspect's movements inside a vehicle may only be classified as "furtive" if the officer clearly sees what a suspect is doing inside said vehicle.

A furtive movement is a "surreptitious movement, [especially] one seeming to be hiding something." BLACK'S LAW DICTIONARY 790 (10th ed. 2014). A surreptitious movement is a movement that is "unauthorized and clandestine" or "done by stealth."

9

BLACK'S LAW DICTIONARY 1673 (10th ed. 2014). Here, Sergeant Wildauer testified that while he "couldn't observe exactly what [Burton] was doing," he observed that Burton "was making a lot of movements in the vehicle." Tr. p. 23. Specifically, Burton, who refused to make eye contact with Sergeant Wildauer, adjusted his body so that he could see what Sergeant Wildauer and Trooper Buchta were doing. Burton's shoulders moved forward and would sometimes dip down as if he were trying to hide something. Sergeant Wildauer eventually became concerned about his and Trooper Buchta's safety because he felt that Burton "was doing way too much movement for a guy that didn't want to make eye contact with [him]." Tr. p. 23. In further describing Burton's movements, Sergeant Wildauer stated that "[i]t's not like he's turning around looking. He's trying to be what I would consider or what -- based on my training and experience, I would say sly about it. He's adjusted himself to look at the mirror to get a vantage point on where we are." Tr. pp. 23-24. Burton's movements were such that the trial court reasonably could have classified the movements as furtive movements.

In addition to Burton's actions both inside and outside the vehicle, Trooper Buchta testified that Burton displayed extreme nervousness. Specifically, Burton was "[s]tuttering with [his] words, talking real fast, shaking." Tr. p. 41. Burton "showed extreme signs of nervousness," more so than the average traffic violator and passenger that Trooper Buchta comes into contact with. Tr. p. 41. In light of Trooper Buchta's description of Burton's demeanor as displaying extreme nervousness, the trial court could reasonably have considered Burton's demeanor as a factor which would suggest that Burton had knowledge

10

of and the intent to exercise control over the cocaine.

Taking into account Burton's furtive movements inside the vehicle, excessive nervousness, and behavior once outside the vehicle, coupled with the fact that the vehicle in question was registered to him and Burton's close proximity to the cocaine, the trial court reasonably concluded that the evidence was sufficient to prove that Burton had knowledge of and intended to exercise control over the cocaine. As such, we conclude that the evidence is sufficient to prove that Burton constructively possessed the cocaine. We therefore affirm Burton's conviction for Class C felony possession of cocaine.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.