


# IN THE
# Court of Appeals of Indiana

Raymond Lamar Williams,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

August 9, 2024

Court of Appeals Case No.
24A-CR-2

Appeal from the Marion Superior Court

The Honorable Charles F. Miller, Judge

The Honorable Matthew E. Symons, Magistrate

Trial Court Cause No.
49D29-2305-F4-13684

---

**Opinion by Judge Tavitas**
Judges Crone and Bradford concur.

**Tavitas, Judge.**

## Case Summary

[1] Following a jury trial, Raymond Lamar Williams was convicted of unlawful possession of a firearm by a serious violent felon, a Level 4 felony. Williams appeals and claims that the State failed to present sufficient evidence that Williams possessed a firearm. We disagree and, accordingly, affirm.

## Issue

[2] Williams presents one issue for our review, which we restate as whether the State presented sufficient evidence to prove that Williams was in possession of a firearm.

## Facts

[3] In the early morning hours of May 11, 2023, Officers Michael Graban and Matthew Pankonie of the Indianapolis Metropolitan Police Department ("IMPD") were dispatched to investigate an incomplete 911 call in the 3300 block of Dr. Martin Luther King, Jr. Drive. When the officers arrived, they observed a woman quickly leave a house and run to a nearby Chrysler 300, which then sped off. This aroused the officers' attention, and Officer Graban followed the Chrysler in his patrol car. Williams, who was driving the Chrysler, attempted to evade Officer Graban by turning frequently and driving down alleyways. When Williams stopped at a red light, Officer Graban caught up with the Chrysler and ran the license plate. This check revealed the plate to

be expired and registered to a different vehicle. Officer Graban, therefore, conducted a traffic stop.

[4] As he approached the vehicle, Officer Graban observed three people inside, including Williams. Officer Graban asked for Williams' driver's license, and Williams reached between the car seats. Unable to find his license, Williams identified himself as "Bryant Banks," but spelled his name "Branty." Tr. Vol. II p. 154. Officer Graban was unable to locate a driver's license associated with the name Bryant Banks. When confronted with this information, Williams still insisted that his name was Bryant but this time misspelled it as "Brant." *Id*. Williams also handed Officer Graban an identification card with the name Landis Jani Bryant-Banks. The Social Security number on the card, however, did not match the number Williams had orally provided to Officer Graban; nor did the photo associated with this individual resemble Williams. Williams also claimed that he was driving to pick up a friend who lived on Dexter Street. Officer Graban found this odd, as Williams had passed Dexter Street while driving.

[5] During the stop, Officer Pankonie arrived to assist Officer Graban. Officer Pankonie could see in plain view a holstered handgun in the back seat of the Chrysler. Eventually, Williams admitted that he had lied about his name and provided the officer with his real name. Officer Graban then removed Williams from the vehicle and placed him in handcuffs. Officer Graban advised Williams of his *Miranda* rights and questioned Williams. Williams stated that

the Chrysler belonged to him and that he had the title for the vehicle at home. Williams, however, denied knowing that a handgun was in the car.

[6] After taking possession of the handgun—a Taurus G2 firearm—Officer Pankonie took DNA swabs from the handgun's slide and sight, frame, trigger and trigger guard, magazine release button, and the holster in which the handgun was found. DNA testing subsequently revealed that the DNA found on the handgun matched Williams' DNA to an astonishing degree of certainty.[1] Additionally, Williams' DNA comprised 60-75% of the DNA obtained, with the remainder coming from other unknown individuals. The forensic scientist who tested the samples testified that more DNA is transferred to an item via direct contact rather than secondary contact.

[7] On May 12, 2023, the State charged Williams with: (1) unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and (2) making a false identification statement, a Class A misdemeanor. The State later filed an amended information alleging that Williams was an habitual offender. The

---

[1] The swab from the holster, was "1.2 octillion times more likely [to have] originated from Raymond Williams and three unknown individuals than if it originated from four unknown individuals . . . ." Tr. Vol. II p. 203. The swab from the slide and sight was "910 trillion times more likely if it – the sample included Raymond Williams and two unknowns versus three unknown individuals." *Id*. The swab from the right side of the frame was "77 sextillion times more likely if it originated from Raymond Williams and two unknown individuals rather than if it originated from three unknown unrelated individuals." *Id*. at 204. The swab from the trigger and trigger guard was "830 septillion times more likely if it originated from Raymond Williams and three unknown individuals rather than if it had originated from four unknown unrelated individuals." *Id*. And the swab from the left side of the frame and magazine release was "750 sextillion times more likely that it originated from Raymond Williams and two unknown individuals than if it had originated from three unknown unrelated individuals." *Id*.

State subsequently amended the serious violent felon charge to allege a different predicate felony and also dismissed the misdemeanor charge.

[8]     On October 19, 2023, the trial court held a jury trial. The jury found Williams guilty of unlawful possession of a firearm by a serious violent felon but did not find Williams to be an habitual offender. On December 12, 2023, the trial court sentenced Williams to seven years in the DOC. Williams now appeals.

## Discussion and Decision

[9]     Williams claims that the State presented insufficient evidence to prove that he possessed the firearm found in the back seat of his vehicle. "Claims of insufficient evidence 'warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility.'" *Stubbers v. State*, 190 N.E.3d 424, 429 (Ind. Ct. App. 2022) (quoting *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020)), *trans. denied*. On appeal, "[w]e consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence." *Id*. (citing *Powell*, 151 N.E.3d at 262). "'We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt,'" and we will affirm a conviction "'unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Id*. (citing *Powell*, 151 N.E.3d at 262). Thus, it is not necessary that the evidence overcome every reasonable hypothesis of innocence; instead, the evidence is sufficient if an inference may reasonably be drawn from it to support the

verdict. *Id.* (citing *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007); *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021)).

[10] To convict Williams of unlawful possession of a firearm by a serious violent felon, the State was required to prove that Williams was a serious violent felon, and that he did "knowingly or intentionally possess[] a firearm . . . ." Ind. Code § 35-47-4-5(c). Here, the only element that Williams claims the State did not prove was his possession of the handgun found in the backseat of his car.[2]

[11] Indiana law on the question of possession is "rather straightforward: it can be either actual or constructive." *Sargent v. State*, 27 N.E.3d 729, 732-33 (Ind. 2015). Actual possession of contraband occurs when a person has direct physical control over the item. *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004).

[12] Williams argues that the State failed to prove that he constructively possessed the handgun found in his car. The State argues that it did not need to resort to constructive possession because it proved that Williams had actually possessed the handgun. We conclude that the evidence is sufficient to support a finding that Williams both actually and constructively possessed the handgun.

## A. Actual Possession

[13] As noted, a defendant actually possesses an item when he has direct physical control over the item. *Id.* The State presented overwhelming evidence that

---

[2] Williams does not deny that the State proved that he is a serious violent felon, nor does he deny that the handgun was a firearm.

Williams' DNA was found in multiple locations on the handgun including the trigger. This supports a reasonable inference that Williams' DNA was on the handgun because he had directly possessed it.

[14] Although we have found no Indiana case directly on point, this Court has held that a defendant can be in "actual possession" of a weapon even if it is not directly found on his person. *See McCoy v. State*, 153 N.E.3d 363, 367 (Ind. Ct. App. 2020) (holding that even though a handgun was found in a shopping basket at a grocery store after the defendant left, which video evidence confirmed, the State presented sufficient evidence which permitted a reasonable inference that the defendant exercised direct physical control over the handgun before he discarded it).

[15] Moreover, courts in other jurisdictions have held that the presence of a defendant's DNA on a firearm found near a defendant is sufficient to support a conclusion that the defendant was in actual possession of the firearm. *See United States v. Lewis*, 62 F.4th 733, 745 (2d Cir. 2023) (holding that evidence was sufficient to establish defendant's actual possession of a firearm found on the back porch of triplex where defendant lived, and defendant's DNA was found on the weapon's handle and trigger); *State v. Manion*, 295 P.3d 270, 282 (Wash. Ct. App. 2013) (holding that evidence was sufficient to prove defendant had actual possession of a firearm found in the bushes near the location defendant was standing, and DNA testing of the firearm demonstrated that defendant was a possible contributor of DNA found on firearm); *United States v. Ivory*, 396 F. Supp. 2d 1253, 1258 (D. Kan. 2005) (holding that evidence was

sufficient to establish that defendant had actual possession of a firearm found in a car parked in defendant's garage where the DNA found on the firearm's trigger guard was consistent with defendant's DNA, and studies had shown that the last person to handle an item was generally the major contributor of DNA on the item); *see also United States v. Richardson*, 60 F.4th 397, 398-99 (7th Cir. 2023) (listing "DNA, fingerprints, [and] an eyewitness" as evidence of actual possession).

[16] Here, Williams was the major contributor to DNA present on the handgun and holster found in the backseat of Williams' car. From this, the jury could reasonably conclude that Williams' DNA was present on the handgun because he had actually possessed it.

## B. Constructive Possession

[17] Even if the evidence is insufficient to show that Williams actually possessed the handgun, we conclude that the State proved that Williams constructively possessed it. If the State cannot prove actual possession, it may still prevail on proof of constructive possession. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). A person constructively possesses an item when the person has both (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. *Sargent*, 27 N.E.3d at 733 (citing *Gray*, 957 N.E.2d at 174).

### 1. Capability to Maintain Dominion and Control

[18] "A trier of fact may infer that a defendant had the capability to maintain dominion and control over an item from the simple fact that the defendant had a possessory interest in the premises[3] on which an officer found the item." *Gray*, 957 N.E.2d at 174 (citing *Gee*, 810 N.E.2d at 340). This is true even when the possessory interest is not exclusive. *Id*. "In essence the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises." *Gee*, 810 N.E.2d at 340-41.

[19] Here, the handgun was found in the back seat of the car Williams owned and was driving. This is sufficient to show that Williams had the capability to maintain dominion and control over the handgun. *See Ross v. State*, 151 N.E.3d 1287, 1291 (Ind. Ct. App. 2020) (fact that vehicle in which drugs were found belonged to defendant established that he had the capability to maintain dominion and control over the drugs), *trans. denied*.

### 2. Intent to Maintain Dominion and Control

[20] Williams focuses his argument on the intent element of constructive possession. That is, he claims that the State failed to present evidence that he had the intent

---

[3] Our courts have long applied the doctrine of constructive possession to items found in motor vehicles. *See, e.g.*, *Cruz v. State*, 218 N.E.3d 632, 639 (Ind. Ct. App. 2023); *Corrao v. State*, 154 Ind. App. 525, 534, 290 N.E.2d 484, 488 (1972). The obvious implication of these cases is that, for purposes of constructive possession, "premises" includes vehicles. *See B.R. v. State*, 162 N.E.3d 1173, 1177 n.5 (Ind. Ct. App. 2021) (noting that, for purposes of constructive possession, the relevant premises was the entire vehicle, not merely a portion of the vehicle).

to maintain dominion and control over the handgun. Unlike the capability element, if a defendant's possession of the premises on which the contraband is found is not exclusive, then the inference of the intent to maintain dominion and control must be supported by additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Gee*, 810 N.E.2d at 341.

[21] The following types of evidence are among those that demonstrate a defendant's knowledge of the presence of a firearm: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the contraband to the defendant, (4) location of the firearm within the defendant's plain view, and (5) the mingling of the contraband with other items owned by the defendant. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004).[4] This list of circumstances is not exhaustive, as other circumstances can just as reasonably demonstrate the requisite knowledge. *Gray*, 957 N.E.2d at 175 (citing *Carnes v. State*, 480 N.E.2d 581, 586 (Ind. Ct. App. 1985)); *accord B.R. v. State*, 162 N.E.3d 1173, 1177 (Ind. Ct. App. 2021).

[22] Williams' possession of the car was not exclusive; there were two other people in the car at the time. Thus, other circumstances must be present pointing to Williams' knowledge of the presence of the handgun found in the car. These

---

[4] In cases involving the constructive possession of illicit drugs, courts often list another additional circumstance that points to the defendant's knowledge of the presence of the drugs: "location of substances like drugs in settings that suggest manufacturing." *See, e.g.*, *Gee*, 810 N.E.2d at 341. This circumstance is inapplicable here.

circumstances include that Williams attempted to avoid being followed by Officer Graban by turning frequently and driving down alleys. Williams also gave Officer Graban a false name, thereby demonstrating a consciousness of guilt. "The giving of a false name is a form of flight and thus evidence of consciousness of guilt." *Bennett v. State*, 883 N.E.2d 888, 892 (Ind. Ct. App. 2008) (citing *Rogers v. State*, 262 Ind. 315, 315 N.E.2d 707, 712 (1974); *Serano v. State*, 555 N.E.2d 487, 494 (Ind. Ct. App. 1990)), *trans. denied*. The handgun was also found in plain view[5] in the back seat of William's vehicle and was, thus, in close proximity to him.

[23] We also consider the fact that Williams' DNA was found on multiple locations of the handgun and on its holster as circumstantial evidence pointing to Williams' knowledge of the presence of the handgun. Again, we have found no published Indiana case holding that the presence of a defendant's DNA on an item can be considered to be a circumstance pointing to the defendant's knowledge of the presence of the item. Other jurisdictions, however, have considered the presence of the defendant's DNA on an item as supporting a finding that the defendant constructively possessed the item. *See United States v. Day*, 106 F.4th 603, 606 (7th Cir. 2024); *United States v. Sadler*, 24 F.4th 515, 552 (6th Cir. 2022), *cert. denied sub nom. Tempo v. United States*, 143 S. Ct. 169; *United*

---

[5] "In addition to being in plain view, . . . the contraband's incriminating character must be readily apparent." *Gray*, 957 N.E.2d at 175 (citing *Lampkins v. State*, 685 N.E.2d 698, 700 (Ind. 1997), *on reh'g*). Here, the incriminating character of the handgun was readily apparent; it was a firearm, which Williams is prohibited from possessing. *Cf. Lampkins*, 685 N.E.2d at 700 (noting that the incriminating nature of a closed bottle of Tylenol was not readily apparent).

*States v. Smith*, 21 F.4th 122, 140 (4th Cir. 2021); *United States v. White*, 915 F.3d 1195, 1199 (8th Cir. 2019); *Dorsey v. United States*, 154 A.3d 106, 113 (D.C. 2017); *Commonwealth v. McClellan*, 178 A.3d 874, 879 (Penn. 2018). We conclude that the presence of Williams' DNA on the handgun and holster support Williams' constructive possession of the handgun.

[24] Considering all these circumstances, the jury could reasonably conclude that Williams had both the capability and intent to maintain dominion and control over the handgun found in the backseat of his car. Williams' argument that his DNA could have transferred to the weapon by other means is simply a request that we reweigh the evidence, which we will not do. The State need not rule out every reasonable hypothesis that could have explained why or how Williams' DNA was on the handgun. On appeal, the evidence "need not overcome every reasonable hypothesis of innocence; it is sufficient so long as 'an inference may reasonably be drawn from it to support the verdict.'" *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012) (quoting *Drane*, 867 N.E.2d at 146). The State, therefore, presented sufficient evidence to support Williams' conviction.

## Conclusion

[25] The State presented sufficient evidence to prove that Williams both actually possessed and constructively possessed the handgun found in his vehicle. This is sufficient to support Williams' conviction for unlawful possession of a firearm by a serious violent felon. Accordingly, we affirm the trial court's judgment.

[26] Affirmed.

Crone, J., and Bradford, J., concur.

ATTORNEYS FOR APPELLANT

Talisha Griffin
Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jennifer Anwarzai
Deputy Attorney General
Indianapolis, Indiana